Dennis V. O'DAY, Plaintiff–Appellant,

v.

**McDONNELL DOUGLAS HELICOPTER COMPANY, a Foreign Corporation, Defendant–Appellee. (Two Cases).**

Nos. 92–15625, 92–16512.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 1994.

Submission Withdrawn April 12, 1994.

Submission Further Suspended Nov. 8, 1994.

Resubmitted June 9, 1995.

Decided March 26, 1996.

Francis G. Fanning, Tempe, Arizona, for the plaintiff-appellant.

Tibor Nagy, Jr., Snell & Wilmer, Tucson, Arizona, for the defendant-appellee.

Robert J. Gregory, Attorney, Equal Employment Opportunity Commission, Washington, D.C., for amicus Equal Employment Opportunity Commission, on behalf of the plaintiff-appellant.

758

Before: FLETCHER, KOZINSKI, and TROTT, Circuit Judges.

Opinion by Judge KOZINSKI; Partial Concurrence and Partial Dissent by Judge FLETCHER.

KOZINSKI, Circuit Judge.

We consider whether an employer found to have violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, can avoid all liability for its discrimination by proving with "after-acquired evidence" that the plaintiff could have been discharged for a legitimate reason.

## I

On June 8, 1990, Dennis O'Day was denied a promotion to the position of Lead Engineer at the McDonnell Douglas Helicopter Company's plant in Mesa, Arizona. One month later, he was laid off as part of a general workforce reduction. O'Day was 46 years old, had worked for the company for 14 years, and was convinced he had been denied the promotion and laid off because of his age.

After first exhausting his administrative remedies with the Equal Employment Opportunity Commission, O'Day filed this lawsuit against McDonnell Douglas challenging the promotion denial and layoff. He states four causes of action: (1) discrimination in employment under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.;* (2) discrimination in employment under the Arizona Civil Rights Act (ACRA), Ariz.Rev.Stat. Ann. § 41–1461 *et seq.;* (3) breach of contract; and (4) wrongful discharge.[1]

The evening after he was denied the promotion, O'Day returned to the plant and searched his supervisor's office. Ostensibly, he was looking for his own personnel file (to

which access was restricted), but while he was rummaging through his supervisor's desk, O'Day came across other documents he found interesting, including his supervisor's promotion recommendations and a handwritten list ranking employees for layoff (a so-called "totem" list). These documents O'Day found in a file that was clearly not meant for general inspection. Not only was the file kept in a closed drawer in his supervisor's desk, but it contained notes and memoranda about sensitive personnel matters and was prominently marked "personal/sensitive." Undaunted, O'Day photocopied the handwritten "totem" list along with several other documents, and later showed them to another employee who had been slated for layoff.[2]

It was not until after discovery began that McDonnell Douglas learned of O'Day's misconduct. McDonnell Douglas immediately converted O'Day's "layoff" status to "terminated," and filed for summary judgment on the grounds that O'Day's misconduct absolved the company of all liability for its alleged discrimination. The district court assumed for purposes of this motion that McDonnell Douglas had in fact discriminated against O'Day, and concluded there was no genuine issue of material fact that McDonnell Douglas would have fired O'Day had it learned of the misconduct earlier. Rejecting O'Day's contention that his conduct could not legally form the basis for discharge because it was protected activity under the ADEA's "opposition clause," 29 U.S.C. § 623(d), the district court applied the after-acquired evidence doctrine first developed in *Summers v. State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700 (10th Cir.1988), and held that O'Day was barred by his own wrongdoing from obtaining any remedy for McDonnell Douglas' discrimination. The district court therefore granted summary judgment in favor of McDonnell Douglas.

On appeal, we consider three issues: 1) whether the after-acquired evidence of O'Day's misconduct absolves McDonnell

---

1. O'Day filed suit in state court, but McDonnell Douglas removed the case to federal district court, which asserted pendent jurisdiction over the state law claims.

2. A week later, but also before he was laid off, O'Day returned and photocopied his entire personnel file. O'Day did not break into the plant; he had access to the building during the night shift.

Douglas of all liability for its discrimination; 2) whether McDonnell Douglas has carried its burden at summary judgment of proving that it would have discharged O'Day had it learned of his misconduct earlier; and 3) whether O'Day's conduct in stealing sensitive personnel files was protected activity under the ADEA's opposition clause.

## II

After one false start, *see Milligan–Jensen v. Michigan Tech. Univ.*, 975 F.2d 302 (6th Cir.1992), *cert. granted*, 509 U.S. 903, 113 S.Ct. 2991, 125 L.Ed.2d 686 (1993), *cert. dismissed*, —— U.S. ——, 114 S.Ct. 22, 125 L.Ed.2d 773 (1993), the Supreme Court has provided some much-needed guidance as to how after-acquired evidence of employee wrongdoing should be treated in employment discrimination cases.[3] In *McKennon v. Nashville Banner Publishing Co.*, —— U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), the Court considered a factual scenario very similar to that presented here. A longtime employee of the Banner Publishing Company sued the company claiming she was discharged because of her age in violation of the ADEA. During her deposition, she admitted that she had "copied several confidential documents bearing upon the company's financial condition," and that she had taken these documents as "insurance" in case she was ever discharged. *Id.* at ——, 115 S.Ct. at 883. Banner asserted that this misconduct, which according to company policy was grounds for discharge, absolved the company of all liability for its unlawful discrimination.

The Supreme Court held that if an employer discharges an employee for a discriminatory reason, later-discovered evidence that the employee could have been discharged for a legitimate reason does not immunize the employer from liability. *Id.* at —— – ——, 115 S.Ct. at 884–85. Reasoning that "a violation of the ADEA cannot be . . . altogether disregarded," *id.* at ——, 115 S.Ct. at 884, the Court held that after-acquired evidence of an employee's wrongdoing bears on the specific

remedy to be ordered. *Id.* at ——, 115 S.Ct. at 886.

■ *McKennon* did not explicate how after-acquired evidence should be treated in every situation, leaving this issue to "be addressed by the judicial system in the ordinary course of further decisions." *Id.* The Court did hold, however, that after-acquired evidence of wrongdoing generally limits an employee's remedy in three significant ways. If an employer discovers that the plaintiff committed an act of wrongdoing and can establish that the "wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge," *id.* at —— – ——, 115 S.Ct. at 886–87, the employer does not have to offer reinstatement or provide front pay, and only has to provide backpay "from the date of the unlawful discharge to the date the new information was discovered," *id.* at ——, 115 S.Ct. at 886.

*McKennon* places the burden of proof with respect to this issue on the employer, carefully articulating that the employer must establish not only that it *could* have fired an employee for the later-discovered misconduct, but that it *would* in fact have done so. *Id.; accord Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1298 (7th Cir.1992). This burden comports with the well-established rule in mixed-motive cases, where the burden rests on the employer to prove by a preponderance of the evidence that it would have discharged the employee (or taken whatever adverse action is at issue) regardless of its discriminatory motive. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 1794–95, 104 L.Ed.2d 268 (1989). The inquiry focuses on the employer's actual employment practices, not just the standards established in its employee manuals, and reflects a recognition that employers often *say* they will discharge employees for certain misconduct while in practice they do not. As the Supreme Court stated in *Price Waterhouse*, "proving that the same decision would have been justified . . . is not the same as proving

---

**3.** *See generally* Cheryl Krause Zemelman, Note, *The After–Acquired Evidence Defense to Employment Discrimination Claims: The Privatization of*

*Title VII and the Contours of Social Responsibility*, 46 Stan. L.Rev. 175 (1993) (discussing the development of the law in this area).

that the same decision would have been made." *Id.* at 252, 109 S.Ct. at 1791–92 (internal quotation marks omitted).

*McKennon* left open whether the preponderance of the evidence standard applicable in mixed-motive cases also applies in the after-acquired evidence context. Nowhere in *McKennon* does the Supreme Court suggest that employers bear a particularly heavy burden in this context; throughout the opinion the Court refers only to what employers must "establish." Relying on our decision in *Nanty v. Barrows Co.,* 660 F.2d 1327, 1333 (9th Cir.1981), O'Day nevertheless argues that we should require McDonnell Douglas to come forward with clear and convincing evidence that it would have discharged him for his misconduct. This we decline to do.

*Nanty* held that an employer who had an illegal motive for an employment decision could limit the employee's remedy by providing clear and convincing evidence that it would have made the same decision apart from the illegal motive. *Id.* The clear-and-convincing standard was thoroughly rejected in *Price Waterhouse,* however; there a majority of the Supreme Court held that an employer who had an illegal motive for an employment decision could avoid liability outright if it showed by only a preponderance of the evidence that it would have made the same decision apart from the illegal motive. 490 U.S. at 258, 109 S.Ct. at 1794–95 (plurality opinion); *id.* at 259–60, 109 S.Ct. at 1795–96 (White, J., concurring); *id.* at 261, 109 S.Ct. at 1796–97 (O'Connor, J., concurring). By enacting the 1991 Civil Rights Act, Congress partially overruled *Price Waterhouse.* The Act allows an employer to limit the employee's remedy, rather than defeat liability outright, by showing it would have made the same decision. *See* 42 U.S.C. §§ 2000e–2(m), 2000e–5(g)(2)(B). Congress also approved *Price Waterhouse* in part, however, as the Act consciously left the opinion undisturbed to the extent it held the employer to a preponderance of the evidence standard. *See* H.R.Rep. No. 102–40(I), 102d Cong., 2d Sess. 45 n. 39 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 583 n. 39; *see also* Dissent at 25–26. Taken together, *Price Waterhouse* and the 1991 Civil Rights Act stand squarely

for the proposition that an employer may limit the employee's remedy if it shows by a preponderance of the evidence that it would have made the same decision apart from an illegal motive. On the standard of proof issue, *Nanty* has therefore been overruled.

The dissent argues that *Price Waterhouse* was a mixed-motive case and that "[t]he Supreme Court in *McKennon* emphasized that mixed-motive cases are not applicable in the after-acquired evidence context, where 'the case comes to [the court] on the express assumption that an unlawful motive was the sole basis for the firing.'" Dissent at 766–767 (quoting *McKennon,* —— U.S. at ——, 115 S.Ct. at 885). This overlooks the reason we are now considering the standard of proof issue; the Supreme Court did not address it in *McKennon.* The issue there was whether after-acquired evidence could defeat liability outright, or merely limit the employee's remedy. Of course mixed-motive cases don't bear on that question. As the Court explained in *McKennon,* it had taken the view in *Mount Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), a mixed-motive case, that an employer could defeat liability outright, if it showed that it had a legitimate motive for an employment action, not only an illegitimate one. *McKennon,* —— U.S. at ——, 115 S.Ct. at 885. The *Mt. Healthy* Court had reasoned that it would be difficult and unnecessary to untangle the impermissible from the permissible motives. *Id.* This reasoning couldn't possibly apply in the *McKennon* context, however, for precisely the reason the Court there gave: In an after-acquired evidence case, the employer's actual motive for taking the employment action is clear and illegal. *Id.* Taken in context, the Court's language in *McKennon* gives not the slightest indication that *Price Waterhouse* is inapplicable to the issue of the employer's standard of proof at the remedy stage of an after-acquired evidence case.

Our dissenting colleague also observes that the employer in a mixed-motive case has acted from a legitimate motive as well as an illegitimate one, whereas the employer in an after-acquired evidence case has acted only from an illegitimate motive; according to the

dissent, the employer's "post hoc justifications" in an after-acquired evidence case are therefore "properly viewed with greater suspicion" than in a mixed-motive case. Dissent at 767. Title VII rejects any such distinction. Since Congress passed the 1991 Civil Rights Act, liability in mixed-motive cases is deemed established once the employee shows that a discriminatory criterion was a motivating factor in the employer's decision, 42 U.S.C. § 2000e–2(m); the only issue raised by the employer's evidence of an additional, legal motive is what the employee's remedy will be. After-acquired evidence cases are identically structured. Liability is established after the employee shows that a discriminatory criterion was a motivating factor in the decision, 42 U.S.C. § 2000e–2(m); the only issue raised by the employer's after-acquired evidence is what the employee's remedy will be, *McKennon*, —— U.S. at ——––——, 115 S.Ct. at 883–84. The mixed-motive employer is thus no less legally culpable by virtue of its legitimate motive than the after-acquired evidence employer. Under *Price Waterhouse* and the 1991 Civil Rights Act, the mixed-motive employer need only meet the preponderance of the evidence standard at the remedy stage. There's no reason the after-acquired evidence employer should have to meet a higher standard.[4]

■ We therefore decline to apply the *Nanty* standard, and instead take our cue from *Price Waterhouse* and the 1991 Civil Rights Act. An employer can avoid backpay and other remedies by coming forward with after-acquired evidence of an employee's misconduct, but only if it can prove by a preponderance of the evidence that it would have fired the employee for that misconduct. *Ac-*cord *Washington v. Lake County*, 969 F.2d 250, 255 (7th Cir.1992); *Smallwood v. United Air Lines, Inc.*, 728 F.2d 614, 616 n. 5 (4th Cir.1984).

### III

■ We consider next whether McDonnell Douglas met its burden of proof at summary judgment. The district court found that McDonnell Douglas had produced sufficient evidence to prevail on its after-acquired evidence defense, and granted summary judgment because O'Day came forward with no evidence to refute that showing. We review the grant of summary judgment de novo, and entertain every reasonable inference in favor of the non-moving party. *Maffei v. Northern Ins. Co.*, 12 F.3d 892, 895–96 (9th Cir.1993).

As evidence that O'Day's misconduct would have resulted in his immediate discharge, McDonnell Douglas introduced the sworn affidavit of Olinda Willis, a "Human Resources Representative" for the division in which O'Day worked. Willis testified that "[h]ad [McDonnell Douglas] been aware of Mr. O'Day's conduct before his layoff, he would have been terminated immediately." CR 14, exh. 6, at 1. Willis also testified that O'Day committed two "Group I" infractions: "Theft or *unauthorized removal from premises* of Company property or property of others" and "[d]eliberate or negligent destruction, damage or *misuse* of Company property or property of others." *Id.* at 1–2 (emphasis in original). Under McDonnell Douglas' Company Rules, Group I rule infractions "are extremely serious and will normally result in

---

4. The dissent points to the report of the House Committee on Education and Labor that accompanied the 1991 Civil Rights Act: "The report ... indicates that Congress intended 'to restore the decisional law in effect in many of the federal circuits prior to ... *Price Waterhouse* ', and one of the decisions cited in the report is *Nanty* (as well as [another case] which followed *Nanty* )." Dissent at 767–768 (citing H.R.Rep. No. 102–40(I), 102d Cong., 2d Sess. 48, 46 n. 41, *reprinted at* 1991 U.S.C.C.A.N. 549, 586, 584 n. 41). The dissent errs to the extent it suggests that Congress endorsed *Nanty* 's clear-and-convincing evidence standard. The single aspect of the prior decisional law the House Committee endorsed was that "proof that an employer would have made the same employment decision in the absence of discriminatory reasons is relevant to determine not the liability for discriminatory employment practices, but only the appropriate *remedy.*" *Id.* at 48, *reprinted in* 1991 U.S.C.C.A.N. at 586 (emphasis in original); *see also id.* at 46 & n. 41, *reprinted in* 1991 U.S.C.C.A.N. at 584 & n. 41 (same) (citing *Nanty* ). Nothing in the legislative history of the 1991 Civil Rights Act—much less the Act itself—supports the view that the employer must provide clear and convincing evidence at the remedy stage of an after-acquired evidence case.

discharge unless extenuating circumstances are present." CR 14, exh. 7.

O'Day contends that this affidavit does not carry McDonnell Douglas' burden because it is "self-serving" and "speculative." He has a point: Working from hindsight, and given the opportunity to limit the backpay and other remedies it might otherwise have to provide, an employer has a strong incentive not only to discover previously undisclosed wrongdoing on the part of the plaintiff, but also to conclude that that conduct would in fact have resulted in the plaintiff's immediate discharge. *Cf. Smallwood*, 728 F.2d at 616 (district court felt " 'entitled to be ... skeptical of after-the-fact decisions as to what the defendant would have done' "). But the fact that Willis' testimony might be thoroughly impeached does not render it incompetent, and McDonnell Douglas is entitled to rely on sworn affidavits from its employees in proving that it would have discharged O'Day for the alleged misconduct. *Id.* at 623 (circuit court would weigh employer's averments "by the same standard as other testimony"). We could hardly require employers in these cases to come forward with proof that they discharged other employees for the precise misconduct at issue (though such evidence would no doubt be helpful to their case), as often the only proof an employer will have is that adduced in this case—a company policy forbidding the conduct and the testimony of a company official that the conduct would have resulted in immediate discharge. *Compare Reed*, 971 F.2d at 1298 ("AMAX did not, for instance, provide proof that other employees were fired in similar circumstances.") *with*

*Washington*, 969 F.2d at 256–57 (uncontradicted affidavit by employer is enough).

This does not mean that employers can prevail based only on bald assertions that an employee would have been discharged for the later-discovered misconduct. In this regard, we find it significant that Willis' testimony is corroborated both by the company policy, which plausibly could be read to require discharge for the conduct at issue here, and by common sense. There is nothing inherently incredible about McDonnell Douglas asserting that it would discharge an employee, even an employee with a spotless record, for sneaking into his supervisor's office, stealing sensitive documents pertaining to employment matters, and showing them to one of the very people affected by the documents. *Cf. Bonger v. American Water Works*, 789 F.Supp. 1102, 1107 (D.Colo.1992).

■ O'Day offers no evidence to rebut Olinda Willis' affidavit;[5] indeed, in his response to McDonnell Douglas' motion for summary judgment, O'Day does not contest that he committed the wrongdoing or that he would have been discharged for it.[6] Instead, O'Day argues that McDonnell Douglas could not legally have discharged him for his misconduct—and thus could not point to his wrongdoing as a bar to backpay and other remedies under *McKennon*—because he was engaging in activity protected from retaliation under the ADEA's "opposition clause," 29 U.S.C. § 623(d).

■ O'Day claims that his conduct—stealing sensitive personnel documents—was protected activity under section 623(d) because his purpose was to preserve evidence for his

5. McDonnell Douglas moved for summary judgment immediately upon learning of O'Day's misconduct, and it is unclear whether O'Day had an opportunity to conduct discovery or otherwise inquire into McDonnell Douglas' employment practices before opposing the motion. However, O'Day did not ask for a continuance to conduct discovery, *see* Fed. R. Civ. Proc. 56(f), nor did he file an affidavit showing the particular facts he expected to find through discovery. In these circumstances, we must accept the record as it stands.

6. For the first time on appeal, O'Day argues that there is a genuine issue of fact for the jury because O'Day committed his wrongdoing only

after McDonnell Douglas denied him the promotion. He claims that he would have had no cause to steal documents relating to McDonnell Douglas' employment decisions if he had not first been discriminated against. As we explain above, an employer has every incentive to invent reasons why it would have discharged an employee for his misconduct. But just as an employee's wrongdoing does not immunize his employer from liability for its discrimination, an employer's discrimination does not immunize its employees from the consequences of their wrongdoing. That O'Day may have been discriminated against does not give him a license to break company rules.

future lawsuit against the company. O'Day had suspected for some time that McDonnell Douglas would fire him, and even filed a complaint with the company claiming that one of his supervisors had discriminated against him on the basis of his age. And he was aware that the company made it a policy to periodically destroy documents, including papers recording the reasons for personnel decisions. In fact, as O'Day points out, the handwritten totem list was destroyed prior to this litigation; McDonnell Douglas produced only a typed, somewhat amended version of the list in discovery. O'Day claims that by gathering evidence for an eventual lawsuit, he was participating in the investigation of an unlawful employment practice under the ADEA, or at the very least opposing such a practice. *Cf. Jefferies v. Harris County Community Action Ass'n*, 615 F.2d 1025, 1036 (5th Cir.1980) (surreptitiously copying and disseminating personnel records is not protected under 42 U.S.C. § 2000e–3(a) because the plaintiff "ha[d] not established that HCCAA would have destroyed the documents had she not taken action to preserve them").

■ Section 623(d) is the ADEA equivalent of the anti-retaliation provision of Title VII, 42 U.S.C. § 2000e–3(a), and like its counterpart it makes it unlawful for an employer to retaliate against an employee for opposing the employer's discriminatory practices or participating in any investigation or proceeding under the ADEA. 29 U.S.C. § 623(d). To make out a claim of retaliation, an employee must establish three things: first, that he engaged in statutorily protected activity; second, that he was discharged or suffered some other adverse employment decision; and third, that there is a causal connection between the two. *See EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1012 (9th Cir.1983); *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 797 (9th Cir.1982); *see also Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1441 (9th Cir.1990) (applying Title VII retaliation cases in interpreting section 623(d)). The key question is whether O'Day was engaged in protected activity that could not legally form the basis of McDonnell Douglas's decision to discharge him.

■ We have previously adopted a balancing test for determining whether an employee's conduct constitutes "protected activity" under Title VII, and here adopt the same balancing test for retaliation claims under the ADEA. The court must balance "the purpose of the Act to protect persons engaging reasonably in activities opposing ... discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *Wrighten v. Metropolitan Hospitals, Inc.*, 726 F.2d 1346, 1355 (9th Cir.1984) (quoting *Hochstadt v. Worcester Foundation*, 545 F.2d 222, 231 (1st Cir.1976)). An employee's opposition activity is protected only if it is "reasonable in view of the employer's interest in maintaining a harmonious and efficient operation." *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir.1978); *accord Jefferies*, 615 F.2d at 1036 (activity must be "reasonable in light of the circumstances").

We strike the balance here in favor of McDonnell Douglas. O'Day committed a serious breach of trust, not only in rummaging through his supervisor's office for confidential documents, but also in copying those documents and showing them to a co-worker. Like any employer, McDonnell Douglas has a strong interest in maintaining employee morale, and in discouraging this sort of behavior. To be sure, O'Day also has a legitimate interest in preserving evidence of McDonnell Douglas' unlawful employment practices, but that doesn't explain why he showed the purloined documents to a co-worker who had been slated for lay-off, or why he felt compelled to preserve evidence of McDonnell Douglas' lay-off decisions. At the time he stole the "totem" list, O'Day had only been denied a promotion; he had not been laid off, nor had he been given any indication that he would be.

In balancing an employer's interest in maintaining a "harmonious and efficient" workplace with the protections of the anti-discrimination laws, we are loathe to provide employees an incentive to rifle through confidential files looking for evidence that might come in handy in later litigation. The opposition clause protects reasonable attempts to contest an employer's discriminatory prac-

tices; it is not an insurance policy, a license to flaunt company rules or an invitation to dishonest behavior.

O'Day was not engaged in protected activity under the ADEA, and could legally be discharged for his misconduct. As O'Day has offered no evidence to controvert McDonnell Douglas' showing that it would in fact have done so, we affirm the grant of summary judgment in favor of McDonnell Douglas on its after-acquired evidence defense.

But that is not the end of the matter. The district court assumed for the purposes of McDonnell Douglas' summary judgment motion that O'Day had carried his burden of establishing a violation of the ADEA, but held that the after-acquired evidence of O'Day's misconduct was a complete bar to relief under the ADEA. Under *McKennon*, however, O'Day would be entitled to some remedy for the discrimination. If O'Day prevails on his discrimination claim on remand, he would at the very least be entitled to backpay from the date of his wrongful termination to the date that McDonnell Douglas learned of his wrongdoing, as well as any other remedies not precluded under *McKennon*.[7]

## IV

Based on its conclusion that O'Day was not entitled to any relief, the district court awarded McDonnell Douglas attorneys' fees under Ariz.Rev.Stat. Ann. § 41–1481(J) (the Arizona Civil Rights Act) and Ariz.Rev.Stat. Ann. § 12–341.01 (Arizona's fee-shifting statute for contract actions). *McKennon* holds that after-acquired evidence of O'Day's wrongdoing can only reduce his remedy, and McDonnell Douglas has by no means won a complete victory. In light of this holding, McDonnell Douglas could not be considered a successful party for purposes of these fee-

shifting statutes, nor could O'Day's claims be deemed frivolous. *See Associated Indemn. Corp. v. Warner*, 143 Ariz. 567, 694 P.2d 1181, 1184 (1985). We therefore reverse the fee award, and decline both parties' request for attorney's fees on appeal. Each party shall bear its costs.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**

FLETCHER, Circuit Judge, concurring in part and dissenting in part.

I concur in that portion of the majority opinion that reverses the district court's grant of summary judgment to McDonnell Douglas on the grounds that after-acquired evidence barred O'Day from obtaining any remedy for his employer's alleged discrimination. I dissent from the remainder of the opinion because it is entirely advisory, substantively wrong, and does violence to our circuit's precedents.

The district court granted summary judgment in favor of McDonnell Douglas because it reasoned that even if it were *assumed* that McDonnell Douglas fired O'Day on account of his age, the company would have fired him anyway for wrongfully acquiring and disseminating confidential company information. As the majority recognizes, this analysis was flawed. Under *McKennon v. Nashville Banner Publishing, Co.*, — U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), after-acquired evidence of an employee's wrongdoing is not a ground for avoiding liability under the anti-discrimination laws if the employer initially terminated the employee for a discriminatory motive. The evidence's only benefit to the employer is to limit the extent of the remedy.

Whether McDonnell Douglas terminated O'Day because of his age is an issue that has yet to be litigated. The majority nonetheless determines that *if* McDonnell Douglas were

---

7. O'Day's remedies under Arizona law are limited to the same extent as his remedies under the ADEA. Arizona courts interpret ACRA consistent with Title VII, *see Higdon v. Evergreen Int'l Airlines, Inc.*, 138 Ariz. 163, 673 P.2d 907, 909 n. 3 (1983), and we have no reason to believe that Arizona would part company with the federal courts as to the after-acquired evidence doctrine as developed by *McKennon*.

On remand, the district court may entertain further briefing and argument concerning the effect of after-acquired evidence on O'Day's wrongful discharge and breach of contract claims. Arizona has not determined the extent to which after-acquired evidence of wrongdoing limits an employee's recovery of compensatory and punitive damages on these causes of action.

to be found liable in further proceedings, its damages will be limited because it has proved as a matter of law that it would have terminated O'Day anyway for his snooping. In doing so, the majority concludes that the appropriate standard of proof at the remedy stage is the preponderance of the evidence standard, that there are no genuine issues of material fact regarding whether McDonnell Douglas would have terminated O'Day, and that there are no genuine issues of material fact regarding whether O'Day's conduct was protected activity. We should not reach any of these issues. If the district court determines (either on summary judgment or after a trial) that McDonnell Douglas did not have discriminatory motives and that the general layoff was not a pretext for discrimination, that will be the end of the case. There will be no remedy stage, and the issues determined by the majority will never be raised.

The most troubling portion of the majority's advisory opinion is its attempt to decide that the employer prevails at the remedy stage if it proves by a preponderance of the evidence that it would have fired the employee for his misconduct that came to light after the initial firing. The majority departs from the governing precedent of this circuit by incorrectly concluding that an intervening Supreme Court decision has rejected that precedent.

The governing precedent is *Nanty v. Barrows Co.*, 660 F.2d 1327 (9th Cir.1981), which was essentially a straightforward disparate-treatment case at the liability stage. Nanty,

an Apache, applied for a job as a furniture delivery truck driver with the Barrows Company. When Nanty arrived at Barrows' offices to apply, he was told—before providing any information to the company—that the job had been filled. Three days later, the company hired two Caucasian drivers. This court held that Nanty had established a prima facie case of discrimination as required by the first step of the analytic framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Because Barrows "totally failed" to articulate any legitimate, nondiscriminatory reason for rejecting Nanty, his "*prima facie* showing [was] sufficient to meet his ultimate burden of proving unlawful discrimination". 660 F.2d at 1332.

Barrows then argued that Nanty was not as qualified as the drivers it actually hired, so it would not have hired him even *if* it had not discriminated. Therefore, it argued, it should not be enjoined to hire Nanty despite his proof that Barrows had discriminated. Because Barrows had summarily rejected Nanty before he provided any information to the company, any evidence regarding his qualifications was after-acquired evidence. 660 F.2d at 1332 ("Barrows knew nothing about Nanty at the time of the rejection."). The court relied on two Ninth Circuit cases, *League of United Latin American Citizens v. City of Salinas Fire Dept.*, 654 F.2d 557 (9th Cir.1981), and *Marotta v. Usury*,[1] 629 F.2d 615 (1980), and one D.C. Circuit case, *Day v. Mathews*,[2] 530 F.2d 1083 (1976), for

---

**1.** *Marotta* appears to be the first case in which the circuit imposed the higher standard of proof. In that case, a Department of Labor employee sued over discrimination in the hiring process for a new position in the department. The Department conceded discrimination at trial, but the district court held that the defendant proved by clear and convincing evidence that the plaintiff would not have been hired for the position even in the absence of discrimination. This court affirmed the judgment for the employer, holding that "[t]he District Court properly insisted that a denial of back pay [the plaintiff had already received, through administrative channels, priority consideration for, and promotion to, a position in the same salary grade as that for which he had not been hired because of the discrimination] required the defendant to establish by 'clear and convincing evidence' that even in the absence of discrimination the rejected applicant

would not have been selected for the open position. We agree in this respect with *Day v. Mathews*, the decision on which the District Court relied." *Id.* at 618. At least some of the evidence on which the defendant relied appears to have been acquired after it made the employment decision, since it never interviewed the plaintiff for the job although it did consider his written application.

**2.** *Day*, on which *Marotta* also relied in imposing the higher standard, involved an HEW employee who, like Marotta, alleged discrimination in the filling of an open position within the department. On appeal, HEW did not contest the district court's finding that it had discriminated by denying Day an opportunity to compete on an equal footing, but it argued that the award of a retroactive promotion and back pay was improper because Day's qualifications were such that he

the proposition that once a plaintiff has proved unlawful discrimination, the employer must show by clear and convincing evidence that the same employment decision would have been made even absent the discrimination.[3] The rationale of these cases is that because the defendant's "unlawful acts have made it difficult to determine what would have transpired if all parties had acted properly", 660 F.2d at 1353 (quoting *League*, 654 F.2d at 559), a high burden of proof should be assigned to the wrongdoing defendant.

*Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), unlike *Nanty*, was a mixed-motive employment discrimination case. Six members of the Court, in three separate opinions, held that "when a plaintiff ... proves that [illegal discrimination] played a motivating part in an employment decision, the defendant may avoid a finding of liability ... by proving by a preponderance of the evidence that it would have made the same decision" in the absence of the discrimination. *Id.* at 258, 109 S.Ct. at 1795 (opinion of Brennan, J.). The Court overruled the D.C. Circuit's holding that the employer must make its showing by clear and convincing evidence in order to avoid liability.

Congress disagreed with the result in *Price Waterhouse* and enacted Section 107 of the Civil Rights Act of 1991 to change it. 105 Stat. 1071, 1075–76. That law provided in relevant part that when a plaintiff establishes that illegal discrimination is a motivating factor in an employment decision, an employer's proof that the same decision would have been made in the absence of discrimination does not absolve the employer of liability but only limits the plaintiff's remedy.

The majority in this case, noting that *McKennon* did not specify what standard of proof the employer must meet in an after-acquired-evidence case at the remedy stage, looks at both *Nanty* and *Price Waterhouse* but chooses the preponderance standard imposed in the latter, reasoning that the clear-and-convincing standard imposed by *Nanty* has been "thoroughly rejected" by *Price Waterhouse*. It does so by concluding that *Nanty* must have been overruled by the holding in *Price Waterhouse* (a mixed-motive case) that a defendant employer who has been shown to have acted at least in part from an illegally discriminatory motive need only prove by a preponderance of the evidence that the same action would have been taken on the basis of the non-discriminatory motive alone.

The blurring of *Nanty* and *Price Waterhouse* leads to mischief. In *Price Waterhouse*, the defendant argued that its employment decision had *actually been made* on the basis of multiple motives, and the Court held that if it could prove that, and if one of those *actual* multiple motives was a legitimate non-discriminatory one, the defendant could avoid liability. (Of course, after the 1991 amendments, the defendant could only limit the plaintiff's remedies). In *Nanty*, by contrast, the employer articulated *no* relevant nondiscriminatory reasons for its employment decision and therefore left the plaintiff's prima facie case on liability unrebutted. The court held that the reasons the employer offered— the applicant's qualifications—were not relevant because the employer "knew nothing about [them] at the time of the rejection". 660 F.2d at 1332. In other words, the evidence of nondiscriminatory motive that the employer offered to justify its decision was

---

would not have gotten the job even in the absence of discrimination. The court remanded the case, holding that HEW must be given the opportunity to avoid the retroactive promotion and back pay remedies by meeting the burden of proving, by clear and convincing evidence, that Day would not have been selected for the position in the absence of the discrimination. The *Day* court relied on four Fifth Circuit employment discrimination cases for its holding that the employer must meet its burden by clear and convincing evidence. *Baxter v. Savannah Sugar Refining Corp.*, 495 F.2d 437, 444–45 (5th Cir.), *cert. denied*, 419 U.S. 1033, 95 S.Ct. 515, 42

L.Ed.2d 308 (1974); *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 259–60 (5th Cir. 1974); *Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d 1364, 1374–80 (5th Cir.1974); and *Cooper v. Allen*, 467 F.2d 836, 840 (5th Cir.1972).

3. *Nanty* was not the last Ninth Circuit case to follow that precedent, either. Subsequent cases that imposed the higher standard include *Jauregui v. Glendale*, 852 F.2d 1128, 1136–37 (9th Cir.1988), and *Ostroff v. Employment Exchange, Inc.*, 683 F.2d 302, 304 (9th Cir.1982).

irrelevant to liability because that motive could not have motivated the decision. The allegedly legitimate motive was only a post hoc explanation that the employer alleged would have justified the decision. The motive evidence proffered was *after acquired,* as in our case, as contrasted to *Price Waterhouse* where the legitimate motive was part of the actual decisional process. In both this case and *Nanty,* then, "the issue [at the liability phase] is whether either illegal or legal motives, but not both, were the 'true' motives behind the decision". *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 400 n. 5, 103 S.Ct. 2469, 2473 n. 5, 76 L.Ed.2d 667 (1983). Thus, *Nanty* not only survived *Price Waterhouse* but was in fact never endangered by it, because the two cases addressed different issues in different types of discrimination suits. The Supreme Court in *McKennon* emphasized that mixed-motive cases are not applicable in the after-acquired evidence context, where "the case comes to [the court] on the express assumption that an unlawful motive was the sole basis for the firing." *McKennon,* — U.S. at ——, 115 S.Ct. at 885.

The majority also overlooks the distinction made in *Price Waterhouse* between the liability and remedy phases. Justice Brennan's plurality opinion in *Price Waterhouse* explains why the clear-and-convincing standard applies in the after-acquired-evidence context, where the issue is the proper remedy, while the preponderance standard applies at the liability stage:

> It is true, as [the plaintiff] emphasizes, that we have noted the clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to enable the jury to fix the amount.... Likewise, an Equal Employment Opportunity Commission (EEOC) regulation does require federal agencies proved to have violated Title VII to show by clear and convincing evidence that an individual employee is not entitled to relief.... And finally, it is true that we have emphasized the importance of make-whole relief for victims of discrimination.... *Yet each of these sources deals with the proper determination of relief rather than with the initial finding of liability.* ... Because we have held that, by proving that it would have made the same decision in the absence of discrimination, the employer may avoid a finding of liability altogether and not simply avoid certain equitable relief, these authorities do not help [the plaintiff] to show why we should elevate the standard of proof for an employer in this position.

490 U.S. at 253–54, 109 S.Ct. at 1792–93 (internal quotations and citations omitted) (emphasis added).

The rationale for elevating the standard in cases such as this one and *Nanty,* is straightforward. In both mixed-motive cases (*Price Waterhouse* ) and after-acquired-evidence cases (this case and *Nanty* ), the court is forced to determine what an employer would have done if it had not engaged in illegal discrimination; because it is the employer's bad act that puts the court to this effort, the employer bears the burden of proof. But in the cases in the latter category, the employer who bears this burden has already been proven to have made an employment decision *solely* on the basis of an illegally discriminatory motive. The post hoc justifications of what such an employer "would have done" if it had not discriminated are properly viewed with greater suspicion than the actual, legitimate, partial motives of the employer in a mixed-motive case. Therefore, the employer's burden in an after-acquired-evidence case is higher and should be so. Applying the *Nanty* standard in this case is the proper course, that is, if we decide the issue at all.

The majority also points out that Congress, in amending Title VII in 1991 to reject the liability analysis of *Price Waterhouse,* did not disturb that decision's choice of the preponderance of the evidence standard. Despite some ambiguity, I think that is probably right. What the majority ignores is that the relevant sections of the Civil Rights Act of 1991 specifically addressed the mixed-motive case, not the after-acquired-evidence case; they were a direct response to the Supreme Court's decision in *Price Waterhouse.* The report of the House Committee on Education and Labor indicates that the

Act was not intended to affect the holding of *Price Waterhouse* that the employer's standard of proof in mixed-motive cases is the preponderance of the evidence rather than clear and convincing evidence. H.R.Rep. No. 102–40(I), 102d Cong., 2d Sess., at 45 n. 39 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 583 n. 39. The report also indicates that Congress intended "to restore the decisional law in effect in many of the federal circuits prior to the decision in *Price Waterhouse*", and one of the decisions cited in the report is *Nanty* (as well as *Ostroff,* which followed *Nanty*). *Id.* at 48, 46 n. 41, *reprinted at* 1991 U.S.C.C.A.N. at 586, 584 n. 41. This is completely consistent with the application of the preponderance standard at the liability stage and the application of the clear-and-convincing standard at the remedy stage in after-acquired-evidence cases.

If the issue were properly before the court in this case, I would follow our precedent and impose the clear-and-convincing standard. Because the majority reaches out to decide issues that are not before us, and then decides them wrongly, I dissent.