**Jeri R. WOODS, Plaintiff–Appellant,**

v.

**CHAMPION CHEVROLET,**
**Defendant–Appellee.**

No. 01–16526.

D.C. No. CV–N–99–99254–DWH.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 13, 2002.

Decided May 2, 2002.

Before HUG and TASHIMA, Circuit Judges, and SEDWICK, District Judge.*

## MEMORANDUM **

Jeri R. Woods ("Woods") appeals the district court's order granting defendant Champion Chevrolet ("Champion") summary judgment and dismissing her claims alleging sex discrimination (hostile work environment) and retaliation under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). We have jurisdiction, 28 U.S.C. § 1291, and affirm in part, reverse in part, and remand.

Champion hired Woods as a salesperson in January or February 1997. When Woods was hired, and throughout her employment at Champion, Champion had a "No Harassment" Policy in place. The policy prohibited harassment on any grounds "relating to an individual's race, color, sex, religion, national origin, citizenship, age, or disability." The policy specified that "harassment" included "sexual advances, requests for sexual favors, unwelcome or offensive touching, and other verbal, graphic, or physical conduct of a sexual nature." The policy instructed employees to report harassment to their supervisors, or, if they did not feel that their supervisor satisfactorily resolved their concerns, to report harassment directly to Jack Stanko or Stanley F. Bondick. Stan-

---

* The Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

ko is Champion's President and Owner. Bondick was in charge of Champion's business office. Woods read, signed, and understood this policy when she began work at Champion. Aside from Stanko and Bondick, other key management personnel during Woods' employment included Joe Matts, Champion's General Manager when Woods was hired; Jack Loflin, a sales team supervisor; and Greg Steward, Woods' immediate supervisor.

In February 1997, Jack Bearden, another salesperson at Champion, began sexually harassing Woods. Woods testified that Bearden began getting close to her, whispering how good he was, how much he could teach her, and how much she would enjoy it. Woods testified that the context was clearly sexual. Bearden's comments and behavior made Woods feel uncomfortable. Woods reported Bearden's behavior to Steward. According to Woods, Steward shrugged off the incident and told her that there was nothing he could do about it. Woods testified that Bearden frequently accosted her with sexual comments. Woods did not remember how many times Bearden harassed her, but estimated the number at between 5 and 20 times during her 22 months at Champion. Woods described these comments as including remarks such as he liked the way Woods walked, and she did not know how good sex could be until she had sex with him. Woods testified that Bearden's sexual comments were graphic and frequent. Aside from reporting Bearden to Steward, Woods testified that she also told Matts about Bearden's conduct. Woods does not know if Matts disciplined Bearden. However, she testified that problems persisted after she made her complaints. Woods explained that she "had more than one conversation with Steward and Jack Loflin about Bearden," but that nothing was ever done.

Cisco Mierteran, another salesperson, made sexual comments or remarks to Woods on multiple occasions during Woods' 22–month employment with Champion, principally asking Woods to go into the back office to have sex with him. Woods did not remember how many times Mierteran harassed her, but estimated that he propositioned her between 10–20 times during her employment. Woods reported Mierteran's conduct to Steward. Woods testified that Steward ignored her complaint, telling her that Mierteran acted that way with all women and that there wasn't anything he could do about it.

At some point after Mieteran began sexually harassing Woods, another salesperson, Richard Hiatt, allegedly told Woods that he wanted to win the lottery and go away with her. He was standing on the opposite side of a car when he made this comment to Woods. Woods told Hiatt, "No, I don't think so," and walked away. Woods reported Hiatt to Loflin. Loflin took no action other than to tell Woods she should talk with Stanko. Woods reported the incident to Stanko. The only apparent steps that Stanko took was to ask Woods if she wanted him to do anything about Hiatt's conduct. Woods advised Stanko that she would handle it. Woods testified that she had not reported more incidents to Stanko because nothing had ever been done when she had reported incidents involving Mieteran and Bearden to Steward. According to Woods, the most that Steward ever told her was to "toughen up," and make references to it being a "man's profession." Because of what she perceived to be a long-standing professional relationship between Stanko and Steward, and because nothing ever happened after she reported incidents to Steward, Woods believed that she would only be labeled a "troublemaker" if she pursued matters. She concluded that it was "absolutely no good to talk to anybody." In addition to

the preceding instances of alleged sexual harassment, Woods testified that Steward frequently called her "babe," and that another salesperson, Jim Bailey, referred to her as a "lot whore."

Champion terminated Woods' employment on September 22, 1998, for "low productivity." Woods filed suit after exhausting administrative remedies. Champion moved for summary judgment. The district court granted Champion's motion. Woods filed a timely appeal.

Summary judgment is reviewed *de novo.* *See Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998). This court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact precluding summary judgment, and whether the district court correctly applied the relevant substantive law. *See id.*

Title VII of the Civil Rights Act of 1964 prohibits covered employers from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (1994). Title VII's prohibition of sex (gender) discrimination includes sexual harassment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). To establish a sexual harassment claim based on a theory of hostile work environment, a plaintiff must show that "1) she [or he] was subjected to verbal or physical conduct of a sexual nature, 2) this conduct was unwelcome, and 3) this conduct was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir.1995) (internal quotations and citation omitted). The workplace must be both subjectively and objectively abusive. *Id.*

Whether the workplace is subjectively abusive depends on the plaintiff's perspective and whether the plaintiff indicated that the conduct was unwelcome. *See Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 873 (9th Cir.2001). Whether the workplace is objectively abusive is evaluated "from the perspective of a reasonable person with the same fundamental characteristics" as the plaintiff. *Fuller*, 47 F.3d at 1527. This inquiry turns on several factors including "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nichols*, 256 F.3d at 872 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

■ Here, construing all facts and inferences in Woods' favor as this panel must, it is undisputed that Woods was subjected to unwelcome verbal conduct of a sexual nature, and that the unwelcome conduct was both subjectively and objectively abusive. In reaching this conclusion, we emphasize that the present record consists solely of Woods' undisputed, unrebutted deposition testimony. The only issue is whether the conduct Woods testified about was sufficiently severe or pervasive to alter the terms and conditions of Woods' employment and create an abusive working environment. This presents a question of law that is reviewed *de novo. See Fuller*, 47 F.3d at 1527.

The district court concluded that the alleged misconduct was not sufficiently severe or pervasive to alter the terms and conditions of Woods' employment because the circumstances of Woods' case were not as egregious as those presented by three other cases, *Anderson v. Reno*, 190 F.3d 930 (9th Cir.1999), *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104 (9th Cir.1998),

and *Montero v. Agco Corp.*, 192 F.3d 856 (9th Cir.1999), where plaintiffs endured multiple harassing incidents over two or more years. In reaching this conclusion, the district court appears to have impliedly adopted a legal standard that would require plaintiffs to suffer more than one incident of sexual harassment over a number of years in order to establish a hostile work environment. However, no such requirement exists or should be implied. Indeed, one incident of sexual harassment may suffice to establish a viable claim if it is sufficiently severe. *See, e.g., Little v. Windermere*, —— F.3d ——, ——, 2002 WL 84237 at *5 (9th Cir.2002) (recognizing principle); *Brooks v. City of San Mateo*, 229 F.3d 917, 925–26 (9th Cir.2000) (declining to reach the question whether a single instance of sexual harassment could establish an actionable claim because plaintiff's claim failed where it only involved one incident of fondling and employer took prompt remedial action). Implying that, as a matter of law, the circumstances attending the alleged harassment must necessarily be particularly egregious or satisfy some similar standard would essentially convert every sexual harassment case into a constructive discharge suit. Employees faced with sexual harassment that is both subjectively and objectively objectionable should not have to wait until the circumstances warrant constructive discharge before seeking to vindicate their rights.

Assuming for argument's sake that the district court's reasoning did not imply a legal standard contrary to precedent, the district court appears to have misconstrued the facts underlying Woods' hostile work environment claim. The district court concluded that Woods merely faced "occasionally annoying, merely offense [sic], ordinary socializing in the workplace, and intersexual flirtation." It is impossible to square Woods' testimony with the district court's conclusion. Being proposi-

tioned, called a "lot whore," and subjected to unwelcome sexually-charged comments over a period of nearly two years can scarcely be characterized as ordinary workplace socializing or normal intersexual flirtation. Indeed, Champion's own harassment policy belies any contention that the incidents Woods complained about constitute ordinary workplace socializing or normal intersexual flirtation. Champion's policy defined "harassment" as including "sexual advances, requests for sexual favors, unwelcome or offensive touching, and other verbal, graphic, or physical conduct of a sexual nature." Woods' allegations—supported by her undisputed, unrebutted testimony—fall directly within this definition. The district court did not evaluate whether the alleged misconduct was either subjectively or objectively abusive.

Accepting all facts and inferences in Woods' favor, as this panel must, the existing record calls into question the district court's characterization of the alleged harassment. Woods testified that she was subjected to frequent and graphic unwelcome sexual advances from at least three employees over an extended period of time, that she reported these incidents to supervisors and managers, that her reports were met with indifference or neglect, and that the harassment never completely stopped. Based on Woods' testimony, genuine issues of material fact exist concerning whether or not the alleged harassment was sufficiently severe and pervasive to constitute a hostile work environment.

■ Champion implies that Woods' claim was properly dismissed because she considered Mierteran (one of her alleged harassers) to be a nice man, and she never sought any medical treatment or counseling for any alleged harassment. However, these facts do not disturb the preceding

analysis. *See Nichols,* 256 F.3d at 873 (facts that plaintiff occasionally engaged in horseplay with some of his harassers or that he never sought mental health treatment do not preclude sexual harassment claim). Champion also suggests that Woods' claims are barred by other work-related misconduct. However, these other incidents would merely affect Woods' potential remedies if relied upon as after-acquired evidence, *see O'Day v. McDonnell Douglas Helicopter Co.,* 79 F.3d 756, 761 (9th Cir.1996) (evaluating after-acquired evidence in context of an age discrimination claim), or would perhaps establish legitimate, non-discriminatory grounds to rebut Woods' retaliation claim, *see Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1464–65 (9th Cir.1994), but would not bar Woods' Title VII claims.

■ We recognize, as Champion argues, that Woods could only remember specific details about two incidents, and that the total number of alleged incidents only averaged out to approximately two incidents of sexual harassment a month for the 22 months that Woods worked at Champion. But these considerations miss the point. Woods' inability to remember specific details may (or may not) bear upon her credibility. *See* NINTH CIRCUIT MODEL JURY INSTRUCTIONS (Civil) § 3.6 (West 2001). At this stage, however, it is premature to draw conclusive inferences based on credibility. Such inferences are reserved for the trier of fact. The fact that Woods did not report more incidents does not vitiate her claim when her undisputed, unrebutted deposition testimony establishes that the alleged incidents were frequent, persisted for the entire course of her employment, and were met with indifference or neglect by her supervisors. Drawing all inferences in Woods' favor, as this panel must, her unchallenged testimony establishes that she was subjected to offensively objectionable sexual harassment.

■ On appeal, Champion argued that it could rely upon its harassment policy as an affirmative defense. *See Nichols,* 256 F.3d at 877 (discussing *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The policy required employees to report harassment to supervisors, or to the owner or business manager if they did not believe that their supervisor satisfactorily responded to their concerns. Woods reported harassment to supervisors and managers, but only reported one incident to the owner pursuant to the existing policy. On that one occasion, Woods testified that the owner merely asked her whether she wanted him to do anything about the alleged harassment. After receiving this somewhat ambivalent response, Woods made no further complaints to the owner. Champion nevertheless asserts that Woods' claims fail because she neglected to take reasonable steps to seek relief in accordance with the existing policy by not presenting complaints to the owner for his review.

We note that the existence of a policy merely establishes that an employer has taken reasonable steps to prevent sexual harassment, but does not answer whether reasonable steps to promptly correct sexual harassment were taken. *See Nichols,* 256 F.3d at 877–78. On remand, the district court may explore whether Champion may rely on its policy as an affirmative defense upon development of an adequate factual record. Based on the present record, however, and assuming all facts and inferences in Woods' favor, genuine issues of material fact preclude Champion's reliance on the policy as an affirmative defense.

The dissent cites *Fuller, supra,* for support without clarification or explanation. However, in *Fuller,* we sustained plaintiff's

claim, in part, emphasizing that whether the workplace is objectively abusive is evaluated "from the perspective of a reasonable person with the same fundamental characteristics" as the plaintiff. *Fuller*, 47 F.3d at 1527. Subsequently, we have clarified that this inquiry turns on several factors including "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nichols*, 256 F.3d at 872 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). The nature of the analysis-driven as it is by the totality of the circumstances-suggests that it is difficult to draw parallels between different cases. What seems clear here, however, is that-at a minimum-the undisputed record establishes a genuine issue of material fact concerning Woods' sexual harassment claim.

We imply no disrespect for the dissent. Indeed, the dissent raises valid points that a reasonable juror might well rely upon in reaching a verdict for the defendant. However, at this stage, on a motion for summary judgment, the court must construe all facts and inferences in favor of the non-moving party. The undisputed record previously reviewed establishes that, at a minimum, Woods was subjected to approximately two incidents of sexual harassment each month from two different co-employees for a period of 22 months. Woods reported these incidents to supervisors and managers who, according to Woods, ignored her reports. It may well be that a jury hearing the evidence may return a verdict for the defendant. However, a reasonable juror could well conclude that the persistent nature of objectionable conduct over a period of nearly two years constituted actionable sexual harassment, particularly where, as here, the persistent misconduct was attended by indifference or neglect from Woods' supervisors.

■ Finally, the district court correctly granted defendant summary judgment regarding Woods' retaliation claim. Woods never identified any adverse employment action that Champion took because of Woods' complaints. Woods contended that she was unfairly required to split sales commissions from time to time, and she implied that she was terminated because of her complaints protesting sexual harassment. However, the record establishes that all employees were required to split sales commissions. Moreover, Champion produced evidence that it terminated Woods' employment for a legitimate, non-discriminatory reason; specifically, unproductive work. Woods never rebutted Champion's reason for terminating her employment. The district court therefore correctly granted Champion's motion dismissing the retaliation claim.

AFFIRMED in part, REVERSED in part, and REMANDED. The parties shall bear their own costs on appeal.

HUG, Circuit Judge, dissenting.

HUG, Circuit Judge.

I respectfully dissent. The plaintiff worked for Champion for 22 months and during that time she contends that fellow employee Jack Bearden made remarks with sexual connotations directed to her 5 to 20 times. She could recall only two of the comments. Even crediting the comments that she could not recall as being objectionable, this amounts to one comment every four months or at most one comment a month.

She testified in her deposition that Cisco Mieteran had made sexual comments to her probably more than 10 times. If this

# 460

were 10 times it would be less than once every other month, even if this were double that, or 20 times, it would be only once a month. Thus, the combined remarks of Bearden and Mieteran were no more than two such remarks a month. This is far short of what we have recognized as a hostile work environment. It is not "sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive working environment." *Fuller v. City of Oakland,* 47 F.3d 1522, 1527 (9th Cir.1955).

The majority relies on *Nichols v. Azteca Rest. Enters., Inc.,* 256 F.3d 864, 872–73 (9th Cir.2001) to identify what constitutes a hostile work environment. It is significant that in that case Sanchez, one of the plaintiffs, testified that he "endured an *unrelenting barrage* of verbal abuse" and that "other Azteca employees *habitually* called him sexually derogatory names." *Id.* (emphasis added). In this case, Woods at most received sexual or flirtatious remarks on two occasions a month, hardly an unrelenting barrage of verbal abuse.

I agree with the district judge that the conduct of which Woods complains falls into the category of occasionally annoying, offense conduct and intersexual flirtation, but not frequent, severe or abusive enough to "alter the conditions of her employment and create an abusive working environment." *Fuller,* 47 F.3d at 1527.