**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| **ALBERT OLE PETERSON,** | No. 13-35969 |
| Plaintiff - Appellant, | D.C. No. 2:12-cv-05025-TOR |
| v. | |
| **NATIONAL SECURITY TECHNOLOGIES, a Delaware corporation,** | **MEMORANDUM**[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted October 14, 2015
Seattle, Washington

Before:    **KOZINSKI**, **W. FLETCHER** and **FISHER**, Circuit Judges.

National Security Technologies (NST) presented evidence that

"[m]anagement ha[d] lost trust and confidence in Peterson" because he reported

the racist email to a lower-ranking employee and gave non-credible reasons for

---

[*]  This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

failing to report the email to Employee Relations in accordance with company policy. For these reasons, NST's Disciplinary Action Review Board (DARB) recommended firing Peterson. DARB member Kenneth Andriessen testified that he provided the Board's recommendation to Stephen Younger, president of NST. According to Andriessen, Younger supported the decision to terminate. Thus, NST produced evidence of a "legitimate, non-retaliatory reason" for terminating Peterson's employment. See Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008).

NST also established that it fired Folle shortly after it learned that he sent the racist email, and that Mario Guerrero—who was not fired—followed company policy by showing the racist email to his superior, Peterson. All of this evidence allowed the jury to conclude that Peterson failed to meet his "ultimate burden of persuasion," Sanghvi v. City of Claremont, 328 F.3d 532, 537 (9th Cir. 2003), on his federal- and state-law retaliation claims. Even if we were to assume that Peterson was engaged in protected activity, the jury reasonably could have declined to find that NST's decision to terminate Peterson was "more likely than

not . . . motivated by a [retaliatory] reason."[1] <u>Miller</u> v. <u>Fairchild Indus., Inc.</u>, 885

F.2d 498, 504 & n.4 (9th Cir. 1989); <u>see</u> <u>Allison</u> v. <u>Hous. Auth. of Seattle</u>, 821

P.2d 34, 42 (Wash. 1991) (holding that the Washington Law Against

Discrimination requires a "plaintiff to prove that retaliation was a substantial factor

behind the [adverse employment] decision"); <u>see also</u> <u>Unt</u> v. <u>Aerospace Corp.</u>, 765

F.2d 1440, 1447 (9th Cir. 1985) (finding company did not fire employee "because

of any motive of reprisal for" employee filing grievances).  Because there was

"evidence adequate to support the [verdict]," Peterson was not entitled to judgment

as a matter of law.  <u>Pavao</u> v. <u>Pagay</u>, 307 F.3d 915, 918 (9th Cir. 2002).[2]

**AFFIRMED.**

---

[1] Because the jury reasonably could have concluded that retaliation was not a motivating factor behind NST's decision to terminate, we need not decide whether the more demanding but-for causation standard now applicable to retaliation claims under Title VII also applies to Peterson's claim under 42 U.S.C. § 1981.  <u>See</u> <u>Univ. of Tex. Sw. Med. Ctr.</u> v. <u>Nassar</u>, 133 S. Ct. 2517, 2533 (2013).

[2] Because we uphold the verdict, we need not consider Peterson's challenge to NST's affirmative defenses.

*Peterson v. National Security Technologies*, No. 13-35969

FISHER, Circuit Judge, dissenting:

I disagree with the majority because, in my view, Peterson established opposition and causation as a matter of law, and the district court's denial of his post-trial motions was consequently erroneous. The key question is whether his chosen manner of reporting the perceived racism was reasonable under the circumstances: if so, Peterson wins; if not, he loses. Because the jury did not reach this issue and we cannot decide it as a matter of law, I would remand for a new jury to decide it in the first instance. Because the majority does not – indeed, cannot – resolve this dispositive issue, its decision only repeats the district court's legal error. Therefore, I respectfully dissent.

A.     The jury presumably found Peterson did not engage in "opposition" activity. That was error – and the majority does not contend otherwise. The uncontroverted record evidence shows Peterson "took a stand" against racial discrimination by providing an "ostensibly disapproving account" of the racist email to Christian. *Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 276-77 (2009). Everyone involved agreed Peterson intended the email to be reported to management and acted accordingly. In the context of a "whole bunch" of other racial jokes in the workplace, Peterson opposed what he

1

reasonably believed was an unlawful hostile environment. *See EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 964 (9th Cir. 2009). No reasonable jury could have concluded otherwise.

The jury also presumably found Peterson failed to establish causation. That, too, was error. When an employee engages in statutorily protected opposition activity, that protected activity "c[an]not legally form the basis of [the employer's] decision to discharge him." *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996). Here, it is undisputed that Peterson's down-the-chain reporting was the *only* basis for National Security Technology's (NST) decision to terminate him. Peterson thus established causation as a matter of law, as well.

Peterson's down-the-chain reporting nevertheless would have *lost* its protected status if it was unreasonable under the circumstances, meaning it "significantly disrupted the workplace" or "hindered his . . . job performance." *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1015 (9th Cir. 1983); *see also O'Day*, 79 F.3d at 763-64 ("The opposition clause protects *reasonable* attempts to contest an employer's discriminatory practices . . . ." (emphasis added)). But the jury never reached this issue – which was presented as a defense to liability – nor can we decide it as a matter of law. There is little (if any) evidence that Peterson's activity "interfere[d] with [his] job performance" or "significantly disrupted the

2

workplace." *Crown Zellerbach*, 720 F.2d at 1015. The jury could have concluded that violating NST's reporting policy was unreasonable; but it might have found it reasonable in light of evidence that NST would have ignored Peterson's complaint had he followed the rules. Because we cannot determine whether Peterson's opposition activity lost its protected status, remand is appropriate.

**B.** Each of the majority's contrary conclusions rests on legal error. *First*, the majority cites two reasons why NST's loss of faith and trust in Peterson could have been a legitimate basis for his termination. The first rationale – that he lied to the Employee Relations investigator – is not supported by the record, and neither party has ever suggested otherwise. The second rationale – that Peterson violated NST's reporting policy – could not have been legitimate if "the specific instances used to justify his termination involved protected conduct." *Mackowiak v. Univ. Nuclear Sys., Inc.*, 735 F.2d 1159, 1163 (9th Cir. 1984). Absent a finding that Peterson's down-the-chain reporting was, in fact, unprotected, there is simply no way to conclude that terminating him *because* he reported down the chain was legitimate.

*Second*, the majority errs in determining that, even assuming Peterson engaged in protected activity, the jury could have found he failed to show causation. The majority suggests the jury could have concluded Peterson was

3

terminated because of the down-the-chain manner, as opposed to the fact, of his opposition activity. But when an employee's "means of opposition" are reasonable – as Peterson's down-the-chain reporting must have been, on the majority's assumption – those means also "receive protection under [the statute]" and cannot be a legitimate basis for termination. *Crown Zellerbach*, 720 F.2d at 1015 n.4; *see id.* at 1016 (holding an employer could not legitimately discipline employees for "interfer[ing] with customer relations" because the means of their opposition activity were reasonable).

**C.** In sum, the evidence establishes Peterson engaged in opposition activity as a matter of law and was fired for doing so. The only relevant question in dispute is whether NST can establish, by affirmative defense, that Peterson's opposition activity was unprotected because it was unreasonable, a question a jury has not yet considered and which it should do on retrial. I would therefore set aside the verdict and remand for a new trial on the reasonableness of Peterson's conduct and, if necessary, whether NST has established the elements of its defense based on after-acquired evidence.