Smita SANGHVI; Tarun Sanghvi,
Plaintiffs–Appellants,

v.

CITY OF CLAREMONT,
Defendant–Appellee,

and

Suzan Smith; Paul Heid; Algrid Leiga;
Diann Ring; Karen Rosenthal; Glenn
D. Southard, Defendants.

No. 01–56248.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 2002.

Filed May 5, 2003.

534

Frank A. Weiser, Los Angeles, CA, for the plaintiffs-appellants.

Gene Tanaka, Best Best & Krieger, Riverside, CA, for the defendant-appellee.

Before HALL, THOMPSON and WARDLAW, Circuit Judges.

## OPINION

DAVID R. THOMPSON, Circuit Judge.

Smita and Tarun Sanghvi ("the Sanghvis") wanted to expand their residential Alzheimer's care facility located in an unincorporated area of Los Angeles County ("the County") adjacent to the City of Claremont ("Claremont" or "the City"). To that end, they sought to obtain sewer service from the City. Explaining that it had an existing policy against connecting properties outside its corporate limits to its sewer system unless the property owners agreed to annexation, the City refused to provide the requested service. Additionally, in what the Sanghvis contend were unlawful acts of retaliation, the City took numerous actions opposing the Sanghvis' efforts to expand their facility, including instituting legal action against them and lobbying County officials. The Sanghvis contend that the City's alleged acts of retaliation and the denial of their request for sewer service violated their civil rights and discriminated against handicapped Alzheimer's patients who would reside in their expanded facility. They asserted claims against the City and various City officials (collectively "the City") under 42 U.S.C. § 1983 and the Fair Housing Act ("FHA"), 42 U.S.C. § 3604.[1]

Summary judgment proceedings disposed of all claims except the Sanghvis' FHA claims of discrimination based on disparate treatment, and the City's alleged failure to reasonably accommodate the housing needs of the disabled Alzheimer's patients. Those claims were tried to a jury which returned a verdict in favor of the City. The district court denied the Sanghvis' post-trial motions, and entered judgment in the City's favor. The Sanghvis appeal. They argue that the district court should have granted their motions for judgment as a matter of law or, in the alternative, for a new trial. In support of that argument, they contend they established a prima facie case of discrimination under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and no reasonable jury could have failed to find that the City unlawfully discriminated against, and failed reasonably to accommodate the housing needs of, the Alzheimer's patients.

The Sanghvis also argue that the district court erred in its jury instructions and special verdict form, both of which employed the *McDonnell Douglas* formulation for resolving the discrimination issue. In addition, they challenge the district court's summary judgment in favor of the City on their retaliation claim, which judgment the court granted by relying on the *Noerr–Pennington* doctrine. Finally, they contend the district court erred in precluding them from presenting evidence of losses sustained by their closely-held corporation, Mountain View Alzheimer's Center, Inc. ("Mt. View").

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

---

1. Unless otherwise specified, all further references are to Title 42 of the United States Code.

## I

### *Motions For Judgment as a Matter of Law and For a New Trial*

We review de novo the district court's denial of the Sanghvis' motion for judgment as a matter of law. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir.2002). We will not reverse the district court's denial of that motion unless, drawing all reasonable inferences in favor of the City, we conclude there was "no legally sufficient evidentiary basis for a reasonable jury to find" in the City's favor. Fed. R.Civ.P. 50(a); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

We review for abuse of discretion the district court's denial of the Sanghvis' motion for a new trial. *Pavao*, 307 F.3d at 918 (citation omitted). The Sanghvis challenge that ruling on the ground that the jury's verdict was contrary to the clear weight of the evidence.

Having reviewed the record as a whole, we conclude that the district court did not err in denying either motion.

### A. *Discrimination Claim*

To prevail on their discrimination claim under the FHA, the Sanghvis had to prove that the City discriminated against the facility's tenants—Alzheimer's patients—by refusing to connect the Sanghvis' facility to the City sewer system unless the Sanghvis agreed to annexation. 42 U.S.C. § 3604(f)(2)(B) (2000).[2] In attempting to prove their FHA claim, the Sanghvis presented evidence to establish a prima facie case based on the *McDonnell Douglas* framework,[3] the elements of which, as applied to this case, are:

> (1) plaintiff is a member of a protected class; (2) plaintiff applied for a [sewer connection] and was qualified to receive it; (3) the [sewer connection] was denied despite plaintiff being qualified; and (4) defendant approved a [sewer connection] for a similarly situated party during a period relatively near the time plaintiff was denied its [sewer connection].

*Gamble*, 104 F.3d at 305 (citations omitted).[4]

The Sanghvis argue that because, on their discrimination claim based on disparate treatment, they made the showing

---

2. The statute makes it unlawful

 [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of ... a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available....

 42 U.S.C. § 3604(f)(2)(B) (2000).

3. The *McDonnell Douglas* formula has been extended beyond the Title VII context in which it was first developed. It has been applied to claims brought under the FHA, Age Discrimination in Employment Act ("ADEA"), and § 1981. *See, e.g., Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir.1997) (applying the *McDonnell Douglas* framework to an FHA discrimination claim); *Palmer v.*

*United States*, 794 F.2d 534, 537 (9th Cir. 1986) (applying the *McDonnell Douglas* framework to an ADEA discrimination claim); *Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 539 (9th Cir. 1982) (applying the elements of a *McDonnell Douglas* prima facie case to a case of intentional employment discrimination pursuant to § 1981).

4. As the Supreme Court has stated, the *McDonnell Douglas* formula is not to be applied in a "rigid, mechanized, or ritualistic" manner, and there may be cases for which this formulaic showing is not required. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. 1817. However, there is no dispute that a *McDonnell Douglas* prima facie showing was required here.

necessary under the *McDonnell Douglas* formulation to survive summary judgment, the district court should have instructed the jury that they had established a prima facie case of discrimination under the FHA. This argument misconstrues the role of the prima facie case in the *McDonnell Douglas* framework.

> "A *McDonnell Douglas* prima facie showing *is not the equivalent of a factual finding of discrimination* .... Rather, it is simply proof of actions taken ... from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations."

*Gay*, 694 F.2d at 544 n. 12 (quoting *Furnco Constr. Corp.*, 438 U.S. at 579–80, 98 S.Ct. 2943) (emphasis and first alteration in *Gay* ). Thus, the *McDonnell Douglas* inference *"can but need not result in an ultimate judgment for the plaintiff.* In other words, a prima facie case under *McDonnell Douglas* is one in which the plaintiff has met his immediate burden of production, but not necessarily his ultimate burden of persuasion." *Gay*, 694 F.2d at 543 n. 10 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)) (emphasis added).

■ During trial, the City produced evidence that, by requiring the annexation of property in exchange for a sewer connection, the City could require property owners to conform their properties to the City's general development plan. Although the City had not enforced its annexation policy before the Sanghvis applied for a sewer connection, City Engineer Craig Bradshaw testified that the reason the City had approved earlier connections without annexation was that theretofore he and other employees in the Engineering Department had been unaware of the annexation policy. Once the City Manager made the Engineering Department employees aware of the policy, it was strictly enforced. The City has not, since then, extended sewer service to properties outside its corporate limits. This evidence supported an inference that the Sanghvis did not qualify to receive a sewer connection, and it supported a finding that the City had a legitimate, non-discriminatory reason for denying a sewer connection to the Sanghvis' property.

■ When the trial evidence reached this point, "the *McDonnell Douglas* framework—with its presumptions and burdens—[was] no longer relevant." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Although the Sanghvis' circumstantial evidence established a *McDonnell Douglas* prima facie case, meeting this burden of production simply *permitted but did not compel* the jury to infer the ultimate fact of discrimination. *Id.* at 510–11, 113 S.Ct. 2742. The City's burden was to present evidence of a legitimate, nondiscriminatory reason for its actions. Because it did so, it "[did] everything that would be required of [it] if the [Sanghvis] had properly made out a prima facie case." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). At that point in the trial, "the *McDonnell–Burdine* presumption 'drops from the case,' " and the fact finder need only address the ultimate question of discrimination. *Id.* (quoting *Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. 1089). The jury decided that question in favor of the City. Because the jury's verdict was not against the clear weight of the evidence, the district court properly denied the Sanghvis' motions for judgment as a matter of law and for a new trial on their

FHA discrimination claim based on disparate treatment.

### B. Reasonable Accommodation

 Under the FHA, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B) (2000). " 'While a [city] need not be required to make "fundamental" or "substantial" modifications to accommodate the handicapped, it may be required to make "reasonable" ones.' " *City of Edmonds v. Wash. State Bldg.Code Council,* 18 F.3d 802, 806 (9th Cir.1994) (quoting *Alexander v. Choate,* 469 U.S. 287, 300, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985)), *aff'd sub nom. City of Edmonds v. Oxford House, Inc.,* 514 U.S. 725, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995) (alterations in *Wash. State* ).

The Sanghvis presented no evidence from which the jury could conclude that the requested accommodation was an accommodation required by the Alzheimer's patients. It was an accommodation sought by the Sanghvis for their personal benefit.

They wanted a sewer hook-up without annexation because they did not want to incur the added cost of complying with the City's building requirements. This was an economic concern of the Sanghvis, not a therapeutic concern of the Alzheimer's patients. *See Brandt v. Village of Chebanse,* 82 F.3d 172, 174–75 (7th Cir.1996) (holding that no grant of a variance from single family zoning was necessary where developer had not shown that her proposed four-unit complex, of which two units would be handicapped-accessible, was for therapeutic rather than economic reasons).

The Sanghvis' reasonable accommodation claim fails because there was a "legally sufficient basis for a reasonable jury to find" in the City's favor. Fed.R.Civ.P. 50(a).

## II

### Jury Instructions and Special Verdict Form

The Sanghvis argue that the district court erred in its jury instructions and special verdict form, both of which set out the *McDonnell Douglas* burden-shifting framework.[5] Although we have never di-

---

**5.** Relying on the *McDonnell Douglas* formulation, the district court instructed the jury in relevant part:

Plaintiffs claim a violation of the Fair Housing Act for intentional discrimination based upon defendants' opposition to the facility before Los Angeles County and the California Regional Water Quality Control Board and defendants' implementation of its sewer policy.

For this claim, plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence to establish their prima facie case:

1. Plaintiffs are members of a protected class.
2. Plaintiffs applied for a sewer connection and were qualified to receive it.
3. The sewer connection was denied despite plaintiffs being qualified.

4. Defendants or the other governmental entities approved sewer connections for similarly situated persons during a period relatively near the time plaintiffs were denied its sewer connection.

If you should find that plaintiffs failed to prove any of the above listed elements, your verdict should be for the defendant on plaintiffs' claim for violations of the Fair Housing Act based on disparate treatment.

If plaintiffs establish their claim of a violation of the Fair Housing Act based on intentional discrimination, defendant must present evidence of some legitimate, nondiscriminatory reason for its actions.

If you find that the defendant failed to present evidence of a legitimate, nondiscriminatory reason for its action, your verdict should be for the plaintiffs on the vio-

rectly addressed the question of the propriety of the use of the *McDonnell Douglas* framework in jury instructions and special verdict forms, we have stated that "it is not normally appropriate to introduce the *McDonnell* Douglas burden-shifting framework to the jury." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 855 (9th Cir. 2002) (en banc), *cert. granted,* —— U.S. ——, 123 S.Ct. 816, 154 L.Ed.2d 766 (2003).

A majority of our sister circuits concur in this view, although none has found the error substantial enough to warrant reversal. Some decisions criticize any use of the *McDonnell Douglas* formulation in instructing the jury, emphasizing that the only question that should go to the jury is the ultimate question of discrimination; other circuits condemn the use of legalistic language and the complexities of burden shifting without rejecting the *McDonnell Douglas* framework outright. *See Cabrera v. Jakabovitz*, 24 F.3d 372, 380–82 (2d Cir.1994) (holding that, although a jury instruction that included the phrase "*prima facie* case" and referred to "defendant's 'burden' of produc[tion]" "created a distinct risk of confusing the jury," in certain instances it would be appropriate to instruct the jury on the elements of a prima facie case); *Watson v. Southeastern Pa. Transp. Auth.*, 207 F.3d 207, 221–222 (3d Cir.2000) (holding that, although it is proper "to instruct the jury that it may

lation of the Fair Housing Act based on disparate treatment.

If the defendant articulates a legitimate, nondiscriminatory reason for its actions, plaintiff must then prove by a preponderance of the evidence that the defendants' reasons for its actions is a mere pretext to discrimination.

If the plaintiffs fail to prove by a preponderance of the evidence that the reason asserted by the defendant is a mere pretext to discrimination, your verdict should be for the defendant on the claim of violation of the Fair Housing Act based on disparate treatment.

In reaching this conclusion, you may consider the evidence establishing plaintiffs' prima facie case and all reasonable inferences drawn therefrom on the issue of whether defendants' explanation is pretextual.

The special verdict form given to the jury tracked the jury instructions, asking in relevant part:

*Question No. 1:* Did plaintiffs apply for a sewer connection with the defendant for which plaintiffs were qualified to receive?

Answer "yes" or "no."

If you answer Question No. 1 "no," then go directly to Question No. 6. If you answer Question No. 1 "yes," then answer Question No. 2.

*Question No. 2:* Was the sewer connection denied to plaintiffs despite plaintiffs being qualified for the connection?

Answer "yes" or "no."

If you answer Question No. 2 "no," then go directly to Question No. 6. If you answer Question No. 2 "yes", then answer Question No. 3.

*Question No. 3:* Did defendant approve sewer connections for similarly situated parties during a period relatively near the time plaintiffs were denied their sewer connection?

Answer "yes" or "no."

If you answer Question No. 3 "no," then go directly to Question No. 6. If you answer Question No. 3 "yes," then answer Question No. 4.

*Question No. 4:* Did defendant establish a legitimate, non-discriminatory reason for its denial of the sewer connection?

Answer "yes" or "no."

If you answer Question No. 4 "no," place a "Not Applicable" in the answer to Question No. 5 and then go directly to Question No. 6. If you answer Question No. 4 "yes," then answer Question No. 5.

*Question No. 5:* Have plaintiffs shown by a preponderance of the evidence that defendant's legitimate, non-discriminatory reason for its refusal to connect plaintiffs' facility to the sewer was a pretext to discrimination?

Answer "yes" or "no."

consider whether the factual predicates necessary to establish the prima facie case have been shown," it is error to instruct the jury on the *McDonnell Douglas* burden shifting scheme), *cert. denied,* 531 U.S. 1147, 121 S.Ct. 1086, 148 L.Ed.2d 961 (2001); *Mullen v. Princess Anne Vol. Fire Co.,* 853 F.2d 1130, 1137 (4th Cir.1988) (noting that the "shifting burdens of production of *Burdine* .... are beyond the function and expertise of the jury" and are "overly complex"); *Walther v. Lone Star Gas Co.,* 952 F.2d 119, 127 (5th Cir.1992) ("Instructing the jury on the elements of a prima facie case, presumptions, and the shifting burden of proof is unnecessary and confusing. Instead, the court should instruct the jury to consider the ultimate question of whether defendant terminated plaintiff because of his age."); *Ryther v. KARE 11,* 108 F.3d 832, 849–50 (8th Cir. 1997) (en banc) (Loken, J., in Part II.A. of the dissent, which a majority of the court joined) (holding that "the jury need only decide the ultimate issue of intentional discrimination," and usually need not make findings on the prima facie case or whether the defendant's explanation is pretextual); *Dudley v. Wal–Mart Stores, Inc.,* 166 F.3d 1317, 1322 (11th Cir.1999) ("We stress that it is unnecessary and inappropriate to instruct the jury on the *McDonnell Douglas* analysis.").[6]

In contrast, only one circuit has not disparaged the use of the *McDonnell Douglas* framework in jury instructions. *See Gafford v. Gen. Elec. Co.,* 997 F.2d 150, 167 & n. 9 (6th Cir.1993) (holding that it was not error to "guid[e] the jury through a three-stage order of proof as opposed to instructing solely on the ultimate issue of sex discrimination").

■ Having considered the views and observations of this and other circuits, we conclude that it is error to charge the jury with the elements of the *McDonnell Douglas* prima facie case. The technical ele-

---

**6.** The First, Seventh, and Tenth Circuits also appear to disapprove of the wholesale adoption of the *McDonnell Douglas* formulation in jury instructions. *See Loeb v. Textron, Inc.,* 600 F.2d 1003, 1016–18 (1st Cir.1979) (explaining that, while the phrase "prima facie case" and other "legal jargon" need not be read to the jury, whether jury instructions should include "the four elements of the *McDonnell Douglas*-type prima facie case (properly tailored to the circumstances) and that the employer's reason is a pre-text" will depend upon the evidence presented), *disapproved of on other grounds by Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 126 n. 19, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); *Gehring v. Case Corp.,* 43 F.3d 340, 343 (7th Cir.1994) ("Once the judge finds that the plaintiff has made the minimum necessary demonstration (the 'prima facie case') and that the defendant has produced an age-neutral explanation, the burden-shifting apparatus has served its purpose, and the only remaining question—the *only* question the jury need answer—is whether the plaintiff is a victim of intentional discrimination."); *Messina v. Kroblin Transp. Sys., Inc.,* 903 F.2d 1306, 1308 (10th Cir.1990) ("The *McDonnell Douglas* inferences ... are of little relevance to the jury."); *but see Rowlett v. Anheuser– Busch, Inc.,* 832 F.2d 194, 200 (1st Cir.1987) ("[T]he district court was correct in using the [*McDonnell Douglas*] framework in the instructions to the jury" because "[i]t is a straightforward way of explaining how to consider whether there is intentional discrimination."), *abrogated on other grounds by Iacobucci v. Boulter,* 193 F.3d 14, 27 (1st Cir. 1999); *Lynch v. Belden & Co.,* 882 F.2d 262, 269 (7th Cir.1989) ("[I]t was proper for the district court to instruct the jury as to the McDonnell Douglas/*Burdine* formula for evaluating indirect evidence.... [Such an instruction] accurately informed the jury of the parties' burdens ...." (footnote omitted)); *Faulkner v. Super Valu Stores, Inc.,* 3 F.3d 1419, 1425 & n. 3 (10th Cir.1993) (holding that there was no error in a jury instruction that incorporated the entire *McDonnell Douglas* formulation because it set forth the proper allocation of proof and directed the jury that age must be the determinative factor in the failure to hire).

**541**

ments of the presumptions and shifting burdens have significant potential to confuse juries. *See Costa,* 299 F.3d at 855.

Moreover, "at [the jury] stage, the framework unnecessarily evades the ultimate question of discrimination *vel non.*" *Id.* at 855–56, quoting *Aikens,* 460 U.S. at 714, 103 S.Ct. 1478. Instead of burdening the jury with the details of a framework designed to allocate burdens and promote the orderly presentation of evidence, district courts should focus the fact finders on the one essential question: whether the plaintiff is a victim of intentional discrimination.[7] *Aikens,* 460 U.S. at 716, 103 S.Ct. 1478; *Gehring,* 43 F.3d at 343.

In the present case, however, the Sanghvis waived their challenge to the instruction the district court gave by failing to object to it. *See* Fed.R.Civ.P. 51. Moreover, they requested an alternative instruction of their own that incorporated the *McDonnell Douglas* three-step burden shifting analysis.

With regard to the special verdict form, the Sanghvis objected in the district court to questions one through five, stating that those questions were likely to confuse the jury on the discrimination and accommodation issues. Their objection, however, did not alert the district court to the *McDonnell Douglas* issue. In an attempt to raise that issue in this appeal, they recast their objection to the special verdict form citing *Watson,* 207 F.3d at 221, for the proposition that "the technical aspects of the *McDonnell/Burdine* burden shifting" framework are confusing. Because the Sanghvis failed to make this objection in the district court, they waived it insofar as they now contend it was error to employ the *McDonnell Douglas* framework. They have not

waived, however, their contention that the special verdict form was confusing. As to that contention, we conclude that any possible error was harmless.

Although questions one through five incorporated elements of the *McDonnell Douglas* framework, there was abundant evidence that the City denied the sewer connection for reasons other than intentional discrimination against the handicapped. Thus, any confusion that *may* have been engendered by the inclusion of questions modeled on the *McDonnell Douglas* factors was harmless, and did not constitute reversible error. *See Cancellier v. Federated Dept. Stores,* 672 F.2d 1312, 1316–17 (9th Cir.1982) (citations omitted) (holding that where the record convincingly rebuts any presumption of prejudice, an instruction that does not misstate the law, but is less clear than it ought to be, is harmless).

The Sanghvis argue, however, that the jury was in fact confused, as demonstrated by a question the jury submitted to the court during deliberations. The jury asked: "Re: Questions 1 & 2, what is meant by 'qualified'? Who or what agency qualified [the Sanghvis] for sewer connection?" Answering this question, the court explained: " 'Qualified,' as used in these instructions, means whether Plaintiffs were similarly situated as other persons outside the City who received sewer hook-ups. The City of Claremont was the sole agency which could qualify Plaintiffs for a sewer connection." The Sanghvis do not contend that this explanation was erroneous. Instead, they argue the fact that the jury sought clarification proves the jury was confused, and as a result they are entitled to a new trial. We disagree.

7. For reference purposes only, *see* Manual of Modern Civil Jury Instructions for the District

Courts of the Ninth Circuit, Instruction No. 12.1 (2001).

The jury's request for clarification of the term "qualified" does not reflect confusion with the special verdict form or with the court's instructions. Rather, it reflects a jury focused on the threshold issue of whether the Sanghvis qualified for a sewer connection. The court's responsive instruction answered that inquiry. Given the parties' conflicting evidence regarding the existence and application of the City's annexation policy, it was appropriate for the jury to determine, consistent with the district court's explanatory instruction, whether or not the Sanghvis met the threshold requirement of qualifying for a sewer connection. *See, e.g., Lynn v. Regents of the Univ. of Cal.*, 656 F.2d 1337, 1345 (9th Cir.1981) (recognizing that "it should make little difference to the outcome" whether the defendant's evidence was analyzed at step one, to determine whether the plaintiff was qualified to receive tenure or at step two, to determine whether the defendant had a legitimate, nondiscriminatory reason for denying tenure). Moreover, regardless whether the jury determined, as it did, that the Sanghvis were not qualified to receive the sewer connection or, as it could have, that the City had a legitimate, nondiscriminatory reason for denying the connection, the weight of the evidence simply does not support a conclusion that the sewer connection was denied based on impermissible discrimination against the handicapped.

Neither the court's jury instructions nor the special verdict form require reversal in this case.

### III

#### Summary Judgment—The Retaliation Claim

■ Relying upon the *Noerr–Pennington* doctrine, the district court granted summary judgment in favor of the City on the Sanghvis' retaliation claims. We affirm that judgment.

■ The *Noerr–Pennington* doctrine, first enunciated in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), immunizes from liability under the Sherman Act two or more persons working together to attempt to persuade the government to take particular legislative or executive action, even when such activity would create a restraint of trade. *Id.* at 136, 81 S.Ct. 523. This exception is grounded in our democratic form of government:

> The right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so. It is neither unusual nor illegal for people to seek action on laws in the hope that they may bring about an advantage to themselves and a disadvantage to their competitors.

*Id.* at 139, 81 S.Ct. 523.

In *Manistee Town Center v. City of Glendale*, we extended this immunity to petitioning activity by a municipality and its officials. 227 F.3d 1090, 1093–94 (9th Cir.2000). There, a municipality and its officials lobbied to prevent particular tenants from leasing space in the plaintiff's shopping center, preferring that the space be rented to a large commercial retailer instead of public entities. *Id.* at 1091–92. The lobbying efforts included writing letters to nearby residents, urging the local press to print articles, and lobbying County officials. *Id.* at 1092. We determined that extending immunity to the municipality and its officials was consistent with the representative democracy rationale of the *Noerr–Pennington* doctrine, reasoning that "[t]his kind of petitioning may be nearly as vital to the functioning of a mod-

ern representative democracy as petitioning that originates with private citizens." *Id.* at 1093.

The district court correctly applied *Manistee* in granting summary judgment in favor of the City on the Sanghvis' retaliation claims. The City and its officials opposed the expansion of the Sanghvis' facility by lobbying other public officials, including state legislators and members of the County Board of Supervisors and by filing suit against the Sanghvis and the Los Angeles Regional Water Quality Control Board (which had allowed the Sanghvis' facility to operate with a septic tank during the initial years of its expansion). These petitioning activities fall within the protective ambit of *Noerr–Pennington*.

 The Sanghvis argue we should apply the "sham" exception to the *Noerr–Pennington* doctrine. We disagree. That exception applies when "a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified." *Id.* at 1094 (quoting *Noerr*, 365 U.S. at 144, 81 S.Ct. 523). There is no evidence in this case to suggest the applicability of the "sham" exception. The district court did not err in granting summary judgment in favor of the City on the Sanghvis' retaliation claim by relying on the *Noerr–Pennington* doctrine.

### IV

#### *Conclusion*

The jury's verdict in favor of the City was not contrary to the clear weight of the evidence. The district court did not err in denying the Sanghvis' motions for judgment as a matter of law and for a new trial. Neither the district court's jury instructions nor its use of the special verdict form require reversal in this case. Summary judgment was properly granted in favor of the City on the Sanghvis' retaliation claim.

 AFFIRMED.[8]

---

**8.** The Sanghvis' evidence of losses incurred by Mt. View, their closely-held corporation, was properly excluded because Mt. View is not a party to this action. *Erlich v. Glasner*, 418 F.2d 226, 228 (9th Cir.1969).