# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DELAWARE HUMAN AND CIVIL RIGHTS COMMISSION,

      Plaintiff *ex. rel.*,

ELAINE CAHILL,

      Relator,

      v.

CHRISTINE WELCH, ELMER YU and WILMA YU,

      Defendants.

) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )

C.A. No. N24C-12-088 KMM

Date submitted: June 5, 2025
Date decided: August 5, 2025

*Upon defendants' motion to dismiss: GRANTED.*

## MEMORANDUM OPINION

Matthew B. Frawley, Esquire, (argued) STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *attorney for plaintiff*.

Brian V. DeMott, Esquire, (argued) MCCOLLOM D'EMILIO SMITH UEBLER LLC, Wilmington, Delaware, *attorneys for defendants*.

## I.    INTRODUCTION

Shortly after Elaine and James Cahill (the "Cahills") purchased a home in the Wilmington neighborhood of Boulder Brook Development (the "Development"), they erected a six-foot stockade fence around the backyard. The Development is subject to a deed restriction which prohibits the erection of any fence without prior approval of 1/3 of the residents in the Development, including the residents of each contiguous or adjacent lot. If approval is obtained, the fence must be "open face" and no more than four feet.

The Cahills did not seek approval before erecting the fence. The adjacent residents, Elmer and Wilma Yu (the "Yus") and Christine Welch ("Welch"), objected to the fence. When the Cahills refused to remove it, the Yus and Welch filed a petition in the Court of Chancery seeking a declaration that the fence violated the deed restriction and a mandatory injunction compelling its removal.

After the action proceeded for over six months, the Cahills asserted that the fence was a reasonable accommodation for their ongoing health issues, as provided in the Delaware Fair Housing Act ("Fair Housing Act" or the "Act"). Thereafter, the Cahills moved to stay that action to allow them time to pursue a claim with the Delaware Human and Civil Rights Commission (the "Commission") for violation of the Act. The stay was denied.

1

After the Senior Magistrate issued a Final Report ruling in favor of the petitioners and ordering removal of the fence, the Commission filed this action. The Commission claims that the Court of Chancery petitioners (defendants here) violated the Fair Housing Act by continuing to pursue that action after they learned of the Cahills' need for a reasonable accommodation. The Court of Chancery action is now stayed pending resolution of this case.

The Commission, on behalf of Elaine Cahill, seeks an injunction, a finding that the fence is a reasonable accommodation which supersedes the deed restriction, and an award of damages.

The defendants move to dismiss, arguing that this Court lacks subject matter jurisdiction, the action is barred by the *Noerr-Pennington* doctrine and the statute of limitations, and the complaint fails to state a claim.

The Commission argues that the Fair Housing Act grants this Court authority to issue an injunction. While creative, the argument misconstrues the statute. The Court of Chancery has exclusive jurisdiction to issue injunctions. Therefore, the Commission's claim for an injunction is **DISMISSED**.

The *Noerr-Pennington* doctrine, which flows from the First Amendment, protects parties against liability for seeking redress from the government, including the courts. The defendants exercised their right to petition the government and sought relief in the Court of Chancery. No exception to the doctrine applies, and

2

therefore, this action is barred by the *Noerr-Pennington* doctrine.[1]  The motion to

dismiss is **GRANTED**.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     *The Court of Chancery Action*[2]

The Development has been subject to a deed restriction since 1945, as later

amended (the "Deed Restriction").[3]  Section 2 provides, in pertinent part:

> APPROVAL OF PLANS. No . . . , fence . . . shall be . . . erected, . . .
> until reasonable plans and specifications have been submitted to and
> approved in writing by one third or more of the residents of Boulder
> Brook Development, which approvals shall include approval by a
> majority of residents residing on each contiguous or adjacent lot. Each
> resident of Boulder Brook Development shall have the right to refuse
> to approve any such plans or specifications for any reason.[4]

Section 7 of the Deed Restriction provides: "FENCES. No fence other than an open

fence, and no fence of any kind more than 4 feet in height, shall be erected or

maintained upon such lands and premise."[5]

---

[1] Accordingly, the Court does not reach the remainder of the defendants' arguments.

[2]  The factual recitation is derived from the complaint in this action and the Court of Chancery action.  Because this action relies on the allegations and pleadings in the Court of Chancery case, the proceedings in that action are incorporated by reference into this complaint, and the Court may consider them on a motion to dismiss.  *See Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996); *Doe 30's Mother v. Bradley*, 58 A.3d 429, 443 (Del. Super. 2012).  The Court also takes judicial notice of the Chancery Court proceedings, but only to the extent a fact is undisputed.  *See* D.R.E. 201; *see also MidFirst Bank v. Mullane*, 2022 WL 4460810, at *6, n.3 (Del. Super. Sept. 26, 2022).

Documents from the Court of Chancery case, 2022-0014-SEM, are cited as "SEM-D.I. __".
Documents from the docket in this action are cited as "D.I.___".

[3] D.I. 1, (Complaint) ¶ 6.

[4] *Id.*; SEM-D.I. 66, (Magistrate's Final Report) p. 4.

[5] D.I. 1, ¶ 7.

3

In September 2021, the Cahills purchased a home in the Development, situated between the Yus and Welch.[6] Shortly after moving in, the Cahills constructed a 6-foot "'closed' privacy fence" (the "Fence").[7] The Cahills did not seek approval before erecting the Fence.[8]

The Yus and Welch objected to the Fence and advised the Cahills that if it was not removed, they would initiate an action in the Court of Chancery.[9] The Cahills did not remove the Fence, and the Yus and Welch (the "Chancery Petitioners") filed a petition in the Court of Chancery on January 5, 2022 (Case No. 2022-0014) (the "Chancery Action"). The petition requested a declaration that the Fence violated the Deed Restriction and a mandatory injunction compelling the Cahills to remove it.[10]

On April 11, 2022, the Cahills answered the petition, admitting to some violations and asserting several affirmative defenses, none of which raised reasonable accommodations.[11] In late July 2022, the Cahills asserted that they were disabled, and the Fence was a reasonable accommodation under the Fair Housing Act.[12] The Chancery Petitioners continued prosecuting the Chancery Action.

---

[6] *Id.*, ¶¶ 3-5.
[7] D.I. 6, (Mot. To Dismiss) Ex. A, ¶ 5.
[8] SEM-D.I. 66, p. 7.
[9] D.I. 6, Ex. G.
[10] SEM-D.I. 1, (Petition) p. 6.
[11] *See* SEM-D.I. 13 (Respondents' Answer).
[12] D.I. 6., Ex. A., ¶ 10.

On November 14, 2022, the Cahills provided the Chancery Petitioners with two identical doctor's notes, dated October 12, 2022, stating that the Cahills "[had] been fully examined with medical history review and [have] been determined to be permanently disabled."[13]  The Chancery Petitioners continued prosecuting the Chancery Action after receipt of the notes.[14]

On January 9, 2023, the Cahills demanded that the Chancery Petitioners "cease their lawsuit immediately" and provided two additional identical doctor's notes, dated January 6, 2023.  The Cahills threatened to file a complaint with the Commission and a motion to stay the Chancery Action if it was not voluntarily stayed.[15]  The January 6 notes identified health conditions from which the Cahills suffered and declared that:

> The 6 foot privacy fence is necessary for James and Elaine to live in the community and use and enjoy their dwelling by:
>
> Allowing them to continue to care for and maintain the health of their 2 small family dogs (ages 11 and 3 years old) that are free-yard trained for elimination and exercise. The type of fencing selected prevents physical/health harm to their small pets and allows for continued care and enjoyment of their pets with their physical disabilities.
>
> This type of fencing was specifically selected since it:
>
> -Does not allow for small dogs to maneuver through or climb over the fence resulting in an escape (closed slat/ 6' height) that my patients would not be able to manage due to physical disability.

---

[13] D.I. 6., Ex. B.
[14] D.I. 1, ¶ 12.
[15] D.I. 6., Ex. C.

-Provides a reasonable barrier preventing wild animals (predators) and/or human intruders from accessing the rear property causing preventable harm/death to my patients and/or their pets and my patients would not be able to manage this type of incident due to physical disability. My patients' property backs up to a wooded area on a portion of the rear yard and frequently traveled road on another area of the rear yard.

Thank you for providing this reasonable accommodation [to] my patients, Mr. James W. Cahill and Mrs. Elaine D. Cahill.[16]

The Chancery Petitioners continued prosecuting the Chancery Action after receipt of the Cahills' demand and the new doctor's notes.[17]

The Cahills moved to stay the Chancery Action on January 11, 2023, based on the complaint they filed with the Commission, which requested the Commission to find that the Chancery Petitioners violated state and federal fair housing statutes.[18] The Court of Chancery denied the motion on May 26, 2023.[19]

The Cahills provided the Chancery Petitioners with additional doctor's notes on March 29, 2023. These notes were dated September 27, 2022 and February 27, 2023. The September 27 note stated that the Cahills had been under the doctor's care, and Mrs. Cahill's medical conditions "require fencing to be placed around her place of living for protection and maintenance of quality of life. The 6 foot barrier

---

[16] *Id.*, Ex. D; D.I. 1, ¶ 13.
[17] D.I. 1, ¶ 14.
[18] SEM-D.I. 27, p. 2.
[19] SEM-D.I. 38. *See also* D.I. 6, Ex. F, p. 19.

fence provides security against home invasion, and allows for the patient to maintain pets at home which improves her quality of life."[20]

The February 27 note stated that Mrs. Cahill "has limitations related to anxiety" and having an emotional support animal helps alleviate her symptoms and function independently.[21] The note identified Mrs. Cahill's Yorkshire Terrier as an emotional support animal.[22]

The Chancery Petitioners continued prosecution of the Chancery Action after receiving these doctor's notes.

The parties in the Chancery Action completed discovery and agreed to submit their dispute to the court on cross-motions for summary judgment. The Court of Chancery issued a Final Report on September 6, 2024.[23] The Senior Magistrate found that the Fence violated the Deed Restriction and recommended an injunction requiring the Cahills to remove the Fence.[24]

Upon the Commission's later determination that the investigation "provided evidence to substantiate reasonable cause to believe an unlawful discriminatory

---

[20] D.I. 6, Ex. G.
[21] *Id.*, Ex. H.
[22] *Id.*
[23] SEM-D.I. 66.
[24] *Id.*

housing practice did occur,"[25] the Cahills again moved to stay the Chancery Action, which the court again denied.[26]

The Cahills filed exceptions to the Final Report.[27]  While the exceptions were being briefed, the Commission filed this action on December 9, 2024.  In the interest of preserving judicial resources and the potential for conflicting outcomes, the Court of Chancery stayed the Chancery Action on January 31, 2025, pending the outcome of this case.[28]

## B.    *The Complaint*

On August 28, 2024, the Commission issued a charge, finding that there was probable cause that the Chancery Petitioners discriminated against Mrs. Cahill by refusing to dismiss the Chancery Action.[29]  The Commission filed the complaint on Mrs. Cahill's behalf against the Yus and Welch, pursuant to its authority under the Fair Housing Act.[30]

The complaint asserts that Mrs. Cahill is disabled, as provided in the Act, and that her disabilities substantially limit one or more major life activities.[31]  Due to these conditions, she utilizes an emotional support animal.[32]  The complaint alleges

---

[25] SEM-D.I. 68, Ex. A.
[26] SEM-D.I. 73.  *See also* D.I. 6, Ex. F.
[27] SEM-D.I. 74.
[28] SEM-D.I. 86.
[29] SEM-D.I. 69, Ex. D.
[30] D.I. 1.
[31] *Id.*, ¶ 21.
[32] *Id.*, ¶ 22.

that despite knowing of Mrs. Cahill's disabilities and need for a reasonable accommodation, the Chancery Petitioners engaged in discriminatory conduct by pursuing the Chancery Action, which resulted in an order mandating removal of the Fence.[33]

The complaint asserts two counts: (I) violation of Fair Housing Act Section 4603A(a)(1) because the defendants/Chancery Petitioners refused to permit Ms. Cahill the reasonable accommodation of the Fence; and (II) violation of Fair Housing Act Section 4603A(a)(2) because the defendants/Chancery Petitioners refused to make a reasonable accommodation and modify the Deed Restriction to allow for the Fence. The complaint seeks injunctive relief (a finding that the Fence is a reasonable accommodation protected by the Act), compensatory damages, punitive damages, attorney fees, and civil penalties.[34]

## C.     *The Motion to Dismiss*

The defendants/Chancery Petitioners move to dismiss, asserting that this Court lacks jurisdiction to grant injunctive relief.[35] They further argue that the alleged discriminatory conduct—prosecution of the Chancery Action—is protected under the First Amendment of the United States Constitution, and therefore, cannot

---

[33] *Id.*, ¶¶ 23-25.
[34] *Id.*, pp. 8-9.
[35] D.I. 6.

serve as a basis for the Commission's Fair Housing Act claims.[36] The defendants/Chancery Petitioners also claim that the complaint is time-barred and fails to state a claim.[37]

## III. STANDARD OF REVIEW

Under Rule 12(b)(1), the court will dismiss an action if it appears from the record that the court does not have subject matter jurisdiction.[38] "Subject matter jurisdiction is determined from the face of the complaint ..., with all material factual allegations assumed to be true."[39] The "party seeking the Court's intervention" bears the burden of establishing jurisdiction.[40]

Pursuant to Superior Court Civil Rule 12(b)(6), this Court will grant a motion to dismiss if a complaint fails to assert sufficient facts that, if proven, would entitle the plaintiff to relief. "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[41]

> That is, when considering such a motion, a court must accept all well-pleaded factual allegations in the complaint as true, accept even vague allegations in the Complaint as "well-pleaded" if they provide the defendant notice of the claim, draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not

---

[36] *Id.*
[37] *Id.*, ¶ 2.
[38] *I Am Athlete, LLC v. IM EnMotive, LLC*, 2024 WL 4904685, at *5 (Del. Super. Nov. 27, 2024).
[39] *Cook v. Deep Hole Creek Assocs.*, 2021 WL 1561410, at *2 (Del. Super. Apr. 21, 2021) (citation omitted).
[40] *Shore Inv., Inc. v. BHole, Inc.*, 2009 WL 2217744, at *2 (Del. Ch. July 14, 2009).
[41] *Walker v. City of Wilmington*, 2014 WL 4407977, at *9 (Del. Ch. Sept. 5, 2014) (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 537 (Del. 2011)); Super. Ct. Civ. R. 12(b)(6).

recover under any reasonably conceivable set of circumstances susceptible of proof.[42]

## IV.  DISCUSSION

### A.  *Subject Matter Jurisdiction*

The defendants/Chancery Petitioners assert that this Court lacks subject matter jurisdiction to grant injunctive relief.[43]  They further argue that the Commission's request for injunctive relief is an improper collateral attack on the Court of Chancery's ruling—that the Fence violates the Deed Restriction and must be removed.

The Commission responds that Section 4612(n) of the Fair Housing Act confers power on the Superior Court to issue injunctions.  The Commission contends that while it is not seeking a review of the Court of Chancery's decision, the outcome of this case (if the Commission is successful) may persuade the Court of Chancery to alter its ruling.[44]

### 1.  *The Court's Authority to Issue an Injunction*

The Court of Chancery has jurisdiction when there is no adequate remedy at law[45] and to "hear and determine all matters and causes in equity."[46]  The Superior

---

[42] *Id.*
[43] D.I. 6.
[44] D.I. 8, (Resp. to Mot. to Dismiss) p. 5.
[45] *Brooks v. Maxwell*, 2025 WL 1115497, at *1 (Del. Super. Apr. 15, 2025); *Dayton v. Collison*, 2018 WL 565304, at *2 (Del. Super. Jan. 24, 2018) (citation omitted).
[46] 10 *Del.* C. § 341.

Court has "jurisdiction as the Constitution and laws of this State confer upon it" but does not have jurisdiction over equitable claims for relief.[47] The Commission argues that the Fair Housing Act is such a law of the State that confers equitable jurisdiction on this court.

### 2. *The Fair Housing Act*

Various provisions of the Fair Housing Act authorize the filing of an action in the Superior Court, the Court of Chancery, or both. The relief each court may grant, however, is different.

A proceeding is initiated by filing a complaint with the Division of Human and Civil Rights (the "Division"), which will then conduct an investigation.[48] Under Section 4610(e), if the Division concludes "that prompt judicial action is necessary" to enforce the Act, it "may authorize a civil action for appropriate temporary or preliminary relief pending final disposition" of its investigation.[49]

If the Commission issues a charge of discrimination, under Section 4612(a), a claimant may elect to have the Fair Housing Act enforced by the Commission through a civil action.[50] If a claimant so chooses, Section 4612(n) describes the relief that may be granted:

---

[47] 10 *Del*. C. § 541; *Brooks*, 2025 WL 1115497, at *1.
[48] 6 *Del. C.* § 4610(a).
[49] 6 *Del. C.* § 4610(e).
[50] 6 *Del. C.* § 4612(a).

12

(5) . . . *the Court* may grant as relief *any relief which a court could grant* with respect to such discriminatory housing practice in a civil action under §  4613 or §  4614(d)(2)b. of this title. . . .[51]

Section 4613 allows for enforcement by private persons.  If an action is filed in the Court of Chancery, Section 4613(c)(2) authorizes the court to grant:

a. *Any temporary, preliminary, permanent or mandatory injunctive* relief enjoining the defendant from engaging in such practice;

b. Ordering such affirmative action as may be appropriate; and

c. Such other relief as the Court deems appropriate to the fullest extent of its jurisdiction.[52]

If an action is filed in the Superior Court, the court may award "actual and punitive damages."[53]

Section 4614 provides for enforcement of the Act by the Attorney General against persons who engage in a pattern or practice of violating the Act.  The Attorney General "may commence a civil action in the Superior Court, Court of Chancery or both . . . ."[54]  The Court of Chancery "[m]ay award such preventive relief, including *a permanent or temporary injunction*, restraining order or other order against the person responsible for a violation of this chapter as is necessary to assure the full enjoyment of the rights granted by this chapter . . . ."[55]  The Superior

---

[51] 6 *Del. C.* § 4612(n)(5) (emphasis added).
[52] 6 *Del. C.* § 4613(c)(2) (emphasis added).
[53] 6 *Del. C.* § 4613(c)(1).
[54] 6 *Del. C.* § 4614(a).
[55] 6 *Del. C.* § 4614(d)(1) (emphasis added).

Court "[m]ay award monetary damages to the aggrieved person or persons; [and m]ay, to vindicate the public interest, assess a civil penalty against the respondent to be paid to the Special Administration Fund . . . ."[56]

### 3. *Analysis*

The Commission argues that because the Division did not seek temporary or preliminary relief pending final disposition of the complaint, the provision authorizing an action in the Court of Chancery (§ 4610(e)) has no application here. The Court agrees.

The Commission instead relies on Section 4612(n), which it contends authorizes the Superior Court to grant injunctive relief.[57] Its reasoning is this: the "Court" is defined in the Act as "the Superior Court unless otherwise stated;"[58] Section 4612(n)(5) authorizes "the Court" (*i.e.*, the Superior Court) to grant any relief "a court" can grant under Sections 4613 or 4614; the Court of Chancery is authorized by these sections to grant injunctive relief; and because an injunction is relief "a court" can grant, the *Superior Court* is authorized to grant injunctive relief.

The problem with the Commission's analysis is that it requires the Court to ignore the statute's clear distinction between the types of relief each court may grant. Under the Commission's interpretation, the Court would have to substitute "Superior

---

[56] 6 *Del. C.* § 4614(d)(2).
[57] *See* D.I. 1. *See also* 6 *Del. C.* § 4612.
[58] 6 *Del. C.* § 4602(8).

14

Court" for "Court of Chancery" in Section 4613(c)(2). The Court, however, must give effect to the legislature's intent and "interpret the statutory language that the General Assembly actually adopt[ed], . . . and explain what [the Court] ascertain[s] to be the legislative intent without rewriting the statute to fit a particular policy position."[59]

The legislature delineated the scope of relief that the Superior Court may grant under the Act, which does not include injunctive relief. There is no basis for the Court to ignore the clear language of the Act. Furthermore, given the long history of the Court of Chancery's exclusive authority to grant injunctive relief, if the legislature were to statutorily confer such authority on the Superior Court, the General Assembly would have to clearly and expressly do so, which it has not done. Accordingly, Section 4613(c)(2) does not confer the Superior Court with authority to issue an injunction.

Section 4614 (the other section cited in 4612(n)) also does not confer jurisdiction on the Superior Court to grant injunctive relief. As with Section 4613, Section 4614 clearly delineates the scope of relief each court may grant, and there is no basis for this Court to ignore the General Assembly's express legislative intent. And, Section 4612(n), upon which the Commission relies, refers to Section

---

[59] *Wild Meadows MHC, LLC v. Weidman*, 250 A.3d 751, 756 (Del. 2021) (citation omitted).

4614(d)(2)b. That subsection authorizes the Superior Court to assess civil penalties. So, there is no reference in 4612(n) to the Court of Chancery or injunctive relief.

Because the "Court of Chancery has *exclusive* jurisdiction where injunctive relief is sought,"[60] this Court lacks jurisdiction to grant such relief. To the extent the complaint seeks an injunction, it is **DISMISSED**.

The defendants/Chancery Petitioners do not seriously dispute that this Court may award monetary damages under the Act. Therefore, the Court next addresses their argument under the *Noerr-Pennington* doctrine.

## B.     *The Noerr-Pennington doctrine*

The crux of the Commission's claim of discrimination under the Act is that the Chancery Petitioners continued to prosecute the Chancery Action after learning of Mrs. Cahill's disability and her need for a reasonable accommodation.[61] The Chancery Petitioners argue that their right to petition the government for redress, as guaranteed under both the First Amendment of the United States Constitution and Section 16 Article I of the Delaware Constitution, bars this action under the *Noerr-Pennington* doctrine.[62]

The Commission agrees that the *Noerr-Pennington* doctrine insulates a party from liability for petitioning the government, but argues that the doctrine does not

---

[60] *Dayton*, 2018 WL 565304, at *2 (emphasis in original) (citation omitted).
[61] D.I. 1, ¶¶ 9-14.
[62] D.I. 6, pp. 20-25.

apply when the dispute is between two private citizens.  Because the Chancery Action is a dispute between private parties, the Commission asserts, the Chancery Petitioners are not insulated from liability and therefore, it may proceed with this action.

### 1.    *Noerr-Pennington doctrine background*

The First Amendment guarantees the right "'to petition the Government for a redress of grievances' and is 'the most precious of the liberties safeguarded by the Bill of Rights.'"[63]   The *Noerr-Pennington* doctrine ensures that one may seek government redress without liability.  The doctrine was initially pronounced in antitrust actions, *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*[64] and *United Mine Workers v. Pennington,*[65] which found that the First Amendment allows competitors to influence government action without liability, regardless of their motives.[66]  The doctrine has since been extended to allow "'use … [of] *courts*" and "'extends to all departments of the Government.'"[67]

---

[63] *BE & K Const. Co. v. N.L.R.B.*, 536 US 516, 524 (2002) (quoting the First Amendment and *Mine Workers v. Illinois Bar Ass'n*, 389 U.S. 217, 222 (1967)).

[64] 365 U.S. 127 (1961).

[65] 381 U.S. 657 (1965).

[66] *Bobcat N. Am., LLC v. Inland Waste Holdings, LLC*, 2019 WL 1877400, at *14 (Del. Super. Apr. 26, 2019).  *See Noerr,* 365 U.S. at 139 ("The right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so."); *Pennington,* 381 U.S. at 670 ("Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition.").

[67] *BE & K Const. Co.*, 536 US at 524 (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972) (emphasis in original) (holding that *Noerr-Pennington*'s protection of the right to petition "governs the approach of citizens or groups of them, administrative agencies and

17

The doctrine has also been applied to areas of the law beyond antitrust, including civil rights[68] and fair housing claims.[69]

To balance the important right of seeking redress from the courts and protection against "'illegal and reprehensible practice[s] which may corrupt the … judicial process[es],'" the Supreme Court recognized the "sham" litigation exception to the *Noerr-Pennington* doctrine.[70]  Courts will apply a two-prong test to determine if the exception applies: "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."[71]  Next, the litigant's subjective motivation must "conceal[] 'an attempt to interfere *directly*

---

[68] *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001) ("the uncertainty of the availability of a First Amendment defense when a plaintiff brings a civil rights case now has been dispelled."); *Herr v. Pequea Twp.*, 274 F.3d 109, 117 (3d Cir. 2001) (noting *Noerr-Pennington* has been applied by Circuit Courts of Appeal to bar liability under state tort laws and Section 1983 claims); *see also Mosdos Chofetz Chaim, Inc. v Vill. of Wesley Hills*, 701 F.Supp. 2d 568, 595-96 (S.D.N.Y. 2010) (noting that while the Second Circuit had not addressed the issue, a majority of Circuit Courts have found *Noerr-Pennington* bars liability for alleged violations of civil rights laws); *Handsome, Inc. v. Town of Monroe*, 2023 WL 2742315, at *23 (D. Conn. Mar. 31, 2023) (same).

courts") (cleaned up)).  *See also Bobcat N. Am., LLC*, 2019 WL 1877400, at *14 and *Brownsville Golden Age Nursing Home, Inc. v. Wells,* 839 F.2d 155, 160 (3d Cir. 1988) ("liability cannot be imposed for damage caused by inducing legislative, administrative, or judicial action.").

[69] *See Tri-Corp Hous., Inc. v. Bauman*, 826 F.3d 446, 450 (7th Cir. 2016) ("We do not see in the Fair Housing Act any effort to displace the *Noerr-Pennington* doctrine . . ."); *Thomas v. Hous. Auth. of Cnty. of Los Angeles,* 2005 WL 6136440, at *10 (N.D. Ca. June 3, 2005) (citing *Sanghvi v. City of Claremont*, 328 F.3d 532, 543 (9th Cir. 2003) (holding that the *Noerr-Pennington* doctrine barred a Fair Housing Act claim).  .

[70] *BE & K Const. Co.*, 536 US at 525 (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 513 (1972)); *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 597 (quoting *Video Int'l Prod., Inc.*, 858 F.2d 1075, 1084 (1988) (the sham exception "require[s] courts to balance carefully the [competing constitutional and statutory rights of the parties].")); *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 58 (1993) (defining sham as "private action that is not genuinely aimed at procuring favorable government action").

[71] *Pro. Real Est. Invs., Inc.*, 508 U.S. at 60-61.

18

with business relationships of a competitor . . . through the use [of] the governmental *process*—as opposed to the *outcome* of the process . . . ."[72]

### 2. *Analysis*

The Chancery Petitioners sought government redress through the courts by pursuing the Chancery Action. Thus, unless an exception applies, the *Noerr-Pennington* doctrine protects the Chancery Petitioners from liability. The Commission does not challenge the Chancery Action as a sham litigation; nor could it. The Senior Magistrate found that the Deed Restriction is enforceable, and the violating Fence must be removed.

The Commission argues, however, that the *Noerr-Pennington* doctrine does not apply because the Chancery Action "did not involve the government [as a litigant] or a petition seeking governmental action," rather, it is an action between two private citizens. To support its position, the Commission relies on *Bobcat N. Am., LLC v. Inland Waste Holdings, LLC.*[73] The *Bobcat* court stated that the *Noerr-Pennington* doctrine "applies only to petitioning efforts seeking governmental, not private, action."[74] The court cited *Allied Tube & Conduit Corp. v. Indian Head, Inc.*[75] The *Allied Tube* court addressed whether action by a private industry standard-

---

[72] *BE & K Const. Co.*, 536 US at 525 (quoting *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993) (emphasis in original)); *Campbell v. Pa. Sch. Bds. Assoc.* 972 F.3d 213, 219 (3d Cir. 2020).
[73] 2019 WL 1877400, at *14-15 (Del. Super. Apr. 26, 2019).
[74] *Id*.
[75] 486 U.S. 492, 499 (1988).

setting organization was protected under the *Noerr-Pennington* doctrine. The Supreme Court recognized that the applicability of the doctrine will vary with "the context and nature of the activity" but found that the challenged activity, which was imposed by "persons unaccountable to the public and without official authority" was "private action" and therefore, not protected. *Allied Tube* and *Bobcat* do not stand for the proposition that the government must be a litigant for the *Noerr-Pennington* doctrine to apply. The doctrine may be triggered by private citizens seeking redress *from a court (i.e.,* the government). The Chancery Petitioners did just that in seeking relief from the Court of Chancery.

Finally, while the Commission does not argue otherwise, the Court finds that the *Noerr-Pennington* doctrine applies to alleged violations of the Fair Housing Act. As recognized by Chancellor McCormick, the right of citizens to petition the government for redress of grievances

> is 'essential to freedom,' liberty and self-government. The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives, whereas the right to speak fosters the public exchange of ideas that is integral to deliberative democracy as well as the whole realm of ideas and human affairs.[76]

Civil rights statutes, such as the Fair Housing Act, provide important protections. However, those rights do not eclipse the constitutional protections of

---

[76] *In re TransPerfect Glob., Inc.*, 2023 WL 5017248, at *4 (Del. Ch. Aug. 7, 2023) (citations omitted).

20

the right to petition the government. The Court finds persuasive the authority from the Third Circuit, and other courts, that have applied the doctrine to civil rights claims.[77]

Accordingly, the defendants\Chancery Petitioners' efforts to enforce the Deed Restriction are immunized under the *Noerr-Pennington* doctrine.

## V. CONCLUSION

This Court lacks jurisdiction to issue injunctive relief. Further, the defendants/Chancery Petitioners are insulated from liability for seeking redress from a court under the *Noerr-Pennington* doctrine. The complaint is **DISMISSED** under Superior Court Rules 12(b)(1) and 12(b)(6).

**IT IS SO ORDERED**.


*Kathleen M. Miller*
Kathleen M. Miller, Judge

---

[77] *Barnes Found.*, 242 F.3d at 160-62 and cases cited therein.